## DILL *vs.* RATHER.

[ACTION AGAINST SURETIES ON OFFICIAL BOND OF REGISTRAR IN CHANCERY.]

1. *Variance.*—The complaint alleged, that a registrar in chancery, whose sureties were sought to be charged for his default, sold certain property under an order of the chancellor, and collected the greater portion of the proceeds; that his report of the sale, showing these facts, was confirmed by the chancellor, and he was ordered to loan out "the money in his hands"; that he afterwards collected and retained, "as such registrar," the balance of the proceeds of sale; and that he subsequently collected the money loaned out, and failed to pay over or account for it. The proof was, that he failed to pay over or account for the balance of the proceeds of sale, collected by him after he had been ordered to loan out the funds in his hands. *Held,* that the variance was fatal.

APPEAL from the Circuit Court of Morgan.

Tried before the Hon. JOHN E. MOORE.

The material facts of the case are stated in the opinion of the court.

R. C. BRICKELL, and JAMES ROBINSON, for appellant.

L. P. WALKER, and D. P. LEWIS, *contra.*

RICE, C. J.—This is an action against the sureties of a registrar of the chancery court of Morgan county. The action was commenced in April, 1855, and is upon the official bond, which, with its condition, is set forth, in substance, in the complaint. After setting forth the bond and condition, the complaint states, that the said chancery court, at its June term, 1845, made an order requiring the said registrar to sell certain property involved in a certain suit therein pending, and to hold the proceeds of the sale subject to its order; that at its June term, 1846, the registrar reported that, pursuant to the order made at its June term, 1845, he had sold the property aforesaid, that the aggregate sum of the sale was $4,476 48½-100, of which he had collected $3,463 24-100; that the said report was confirmed, and the registrar ordered *to loan out the money in his hands* until the next succeeding term; that the registrar *afterwards collected, and retained in his hands,* "*as such registrar,*" $1,013 24-100, *the balance of the proceeds of the sale, and in April,* 1849, ceased to be registrar; that at the June term, 1854, and whilst said suit was still pending, the said court appointed the plaintiff receiver therein, and empowered him to collect all moneys and debts due and belonging to the funds in said suit.

Before stating the remaining sentence of the complaint, we stop for the purpose of calling attention to the fact, that there is nothing in these statements of the complaint which are hereinabove referred to, which amounts to an assignment of a breach of the condition of the bond, or shows a right in the plaintiff to recover. The statements as to the $1,013 24-100 do not show any such right, because, although they show that the registrar did collect it and retain it for a time, yet they also show that his retention of it was "*as such registrar,*" and that he ceased to be registrar in 1849; and there is no averment that he retained it a single day *after he ceased to be registrar,* or that he failed to pay or account for it properly *after he ceased to be registrar.* We also call attention to the fact, that the statements of the complaint, hereinabove set forth in substance, divide the proceeds of the sale of the property into two parts, each of which is particularly described. One

Dill v. Rather.

of these parts is described as having been *collected* by the registrar before the June term, 1846, of the chancery court, and as having been so reported at that term, and as having at that term been ordered by the court to be *loaned* out by the registrar. The other part is described as the "balance of the proceeds of the sale," and as having been *afterwards* collected and retained by him "*as such registrar*," coupled with the statement that he ceased to be registrar in April, 1849; but there is no statement showing that this last mentioned part ever was loaned by the registrar, or that he was ever ordered to loan it.

Now, bearing in mind the description of the two distinct parts of the proceeds of the sale, contained in that part of the complaint hereinabove referred to, and taking that description in connection with the last sentence of the complaint, we can readily perceive that there is but one breach assigned in the complaint, and can easily understand what that breach is. That sentence is in the following words: "And plaintiff says, said James B. Graham, as registrar aforesaid, *received* of the proceeds of said sale, *and loaned*, a large sum of money, to-wit, the sum of five thousand dollars, *which* was *afterwards collected* by him as such registrar, *which* he failed to pay over to his successor in office, or otherwise account for, to the damage of the plaintiff as stated above."

It is clear that the breach assigned does not embrace *both parts* of the proceeds of the sale, to-wit, the part which the registrar had in the first instance, and before the June term, 1846, *received*, and *afterwards loaned* and *subsequently collected*, and the part which the complaint shows he did not collect until after the June term, 1846, and did not loan at any time. Which of these parts does the breach cover? Evidently the former, that is, the part which had been *received* by the registrar, and then *loaned*, and *afterwards* collected. A recovery by the plaintiff under the complaint in this case would not bar a recovery in a subsequent suit for the other part, to-wit, the part which he collected after the June term, 1846, and never loaned; and therefore ought not to be allowed upon evidence showing, at most, only a failure of the registrar

to pay over to his successor, or otherwise account for, the part which he collected after the June term, 1846, and never loaned. Upon this ground, if upon no other, the charge of the court is defensible. For the evidence adduced on the trial showed no more than a failure of the registrar to pay over or account for four hundred dollars of the proceeds of said sale, which he did not collect until after the June term, 1846, and which he never loaned, and was never ordered to loan.

If the words "and loaned," which occur in the last sentence of the complaint, had been left out of it, there would have been no variance between the allegations and proof. But those words, as used in that sentence, are *descriptive* of the *identity* of that which is legally essential to the claim, and cannot therefore be rejected. It may be true, that the plaintiff has by the use of these words described his claim with unnecessary particularity. But he selected his own terms in order to express the nature and extent of his claim, and he cannot complain that he is limited by them. He must submit to that established rule of law, which declares that a plaintiff or prosecutor shall in no case be allowed to transgress those limits which, in point of *description*, limitation and extent, he has prescribed for himself. "To reject any allegation *descriptive* of that which is essential to the claim or charge, would obviously tend to mislead the adversary"; and the pleading would, to that extent, cease to be a notice to the adversary of what he must prepare himself to meet.— 3 Starkie on Ev. (edition of 1826,) 1529–1532; 1 Chitty's Pl. 228–229; 1 Greenl. Ev. § 65; 1 Starkie on Ev. 374; Eskridge v. The State, 25 Ala. 30; Felix v. The State, 18 Ala. 720; Good v. Mylin, 8 Penn. State Rep. 51.

There may be a resemblance between the claim alleged and the claim shown in the evidence, but there is no *legal identity*. There is a fatal variance between the allegations and proof; and as that variance justifies the charge of the court, and compels us to affirm the judgment, we decline to consider any other question presented on the record.

Judgment affirmed.