## TOOLE *vs.* URQUHART.

[ACTION UNDER CODE ON DEPENDENT AGREEMENT.]

1. *Complaint; when sufficient.*—In an action on a dependant covenant or agreement, a complaint which follows the form given in the Revised Code for such action is sufficient.

2. *Agreement to deliver property, action for damages for breach of; when seizure of, by Confederate officer no defense against.*—T. and U. had a controversy about the ownership of a horse. T. threatened to inform a Confederate officer that it was property of the government, it being branded U. S.; whereupon, U., to find out the Confederate officer's intention in relation to the horse, and not to induce him to seize it, went to see him, and was told by the quartermaster that he would seize the horse. After this, U. informed T. of all that occurred, and T. and U. agreed to arbitrate the matters in dispute, and an award was rendered that T. deliver the horse to U., which was accepted by T. and U.,—*Held*, that it was no defense to T., in an action by U. against him on the agreement, that a Confederate quartermaster seized the horse on information gained from U. on his visit to him.

APPEAL from the Circuit Court of Montgomery.
Tried before Hon. JOHN D. CUNNINGHAM.

This was an action by the appellee, Urquhart, against
the appellant, Toole, in the form given in the Revised Code,
to recover damages for the breach of a dependent agree-
ment, which agreement, as set out in the complaint, is in
substance as follows : "A suit having been instituted in the
circuit court by the plaintiff against the defendant for a
certain horse, bridle, saddle, and sheep-skin, which suit be-
ing then pending and undecided," the parties verbally sub-
mitted the matters in controversy to arbitration, and an
award was made that plaintiff should dismiss his suit, pay
defendant $300, and pay one-half the costs of suit ; and
upon this being done, defendant was to pay the other half
of the costs of suit, and " deliver to plaintiff said *horse,
bridle, saddle, and sheep-skin.*" The complaint then avers
the acceptance of the terms of the award by both parties,
and a full compliance thereof by plaintiff, and a refu-
sal on the part of the defendant, after demand, "to deliver
to plaintiff said horse, bridle, saddle, and sheep-skin, or
either of them," to the damage of plaintiff $1000, where-
fore, he sues, &c. [The complaint sets out the names of
the arbitrators, and the award, &c., and the manner in
which he had complied, &c., in full.]

On the trial, as shown by the bill of exceptions, the de-
fendant demurred in short, &c., to the complaint—1st, be-
cause the complaint does not contain a substantial cause
of action ; 2d, because it does not show any liability of
plaintiff to defendant ; 3d, because it is too vague and un-
certain in its description of the property referred to.  The
demurrer was overruled, and defendant excepted.

The plaintiff then pleaded, in short, &c., the general
issue, with leave to give in any matter which might be
pleaded in bar, and plaintiff joined issue with like leave.

The plaintiff, as a witness in his own behalf, testified,
that in 1864, he bought a horse branded [U. S.] from one
of his neighbors ; that at the time of the purchase, he had
known the horse in the neighborhood for over a year ; that
a short time after the purchase, the horse, his bridle, sad-

dle and sheepskin were stolen, and two or three days after-wards, on learning that defendant had the horse in his possession, he went to see him on the subject, and found the horse, bridle, saddle and sheep-skin in his possession.  Defendant refused to give up the horse and things, as he said he had bought them at public auction, in the city of Montgomery, a day or two before.  Defendant made some offers in compromise of the matter, not material to be set out, and failing to agree, plaintiff brought an action of detinue to recover "said property," and the record of the suit was offered in evidence along with plaintiff's testimony, but is not set out in the bill of exceptions.  Plaintiff further testified that defendant, in the interview, told him he should never have the horse ; that from the brand on him he was the property of the Confederate States, and that he intended to report the horse to the Confederate quartermaster, and have him come and take him.  After this, plaintiff went to see Cummings, then Confederate quartermaster at Montgomery, and told him the facts in relation to the horse, in order to ascertain what he would do in the matter, and not for the purpose of getting him to take the horse. Cummings informed him that he would take the horse, and told him to tell Toole to bring up the horse, and that Cummings would be after him.  After this, plaintiff saw Toole and told him what had occurred, and then Toole and himself agreed to arbitrate the matters in dispute.  The plaintiff then testified as to the arbitration, in all respects as set out in the complaint, except that the award of the arbitrators required, upon the payment of the $300 and half of the costs of suit, and the dismissal of the same by the plaintiff, that the defendant "should *deliver up the horse.*" When the award was made, both parties accepted the same and agreed to abide thereby, and plaintiff dismissed the suit, paid half of the costs, and made the payment as required to the defendant.  Plaintiff, several times after this, demanded said horse, bridle, saddle, and sheep-skin, but defendant failed to deliver them, giving as a reason that the Confederate quartermaster, Cummings, had taken the horse.

The defendant was also examined, as a witness in his

own behalf, and testified that he bought the horse, bridle, saddle and sheep-skin, at public auction in the city of Montgomery, a few days before plaintiff claimed them; that although he told plaintiff that he intended to report the horse to said quartermaster, he did not do so, nor had he intended to do so; that when they agreed to go into arbitration, and when a hearing of the parties was commenced before them, he proposed to bring the horse to the store in the city of Montgomery where the arbitration was then going on, so as to be ready to deliver him, if the arbitrators should so decide; that plaintiff declined this proposition, lest Cummings, the quartermaster, should come there and take him, and told defendant to let the horse remain where he was until plaintiff started home, when he would go by defendant's house and receive him there. To a question by defendant, as to what he must do if Cummings came, plaintiff replied, that if he once got him, he would ask Cummings no odds. After the arbitration, plaintiff went off in town to attend to some business, and in an hour or two called for the horse, but some half an hour after the award was made, Cummings, the quartermaster, came with a policeman and took the horse, and defendant never saw him afterwards, except the day afterwards when the horse was sent out of the city, tied to a Confederate wagon. The testimony of defendant agreed with that of the plaintiff, as to the arbitration and the terms of the award, and he admitted the demand on him for the horse, bridle, saddle and sheep-skin, as stated by the plaintiff. The evidence as to the value of the property was conflicting. This was substantially all the evidence.

At the request of the plaintiff, the court charged the jury, "that if they believed from the evidence that before the arbitration defendant told the plaintiff that plaintiff should never have the horse, and that he was the property of the Confederate government, and that he intended to turn him over to a Confederate States officer, and that in consequence of this declaration of defendant, plaintiff went to Cummings, who was a Confederate States officer, to inquire what would be his course under such circumstances,

42

and not to induce him to take the horse, and that after-wards, and before the arbitration, plaintiff informed de-fendant what he had done, and that afterwards the parties agreed to arbitrate, and did arbitrate the matter, and de-fendant, in pursuance of the award, undertook to deliver the horse and failed to do so, in consequence of Cummings taking him on the information given by the plaintiff, and of which defendant had been fully informed at the time he agreed to deliver him,—that the taking of the horse by Cummings under these circumstances would not constitute a defense to this action." To the giving of this charge the defendant excepted.

The defendant then asked the court to charge the jury, that "if they believed all the evidence in the case, the plaintiff was not entitled to recover." This charge the court refused to give, and defendant excepted.

The defendant then asked the court to charge the jury, that "if they believed all the evidence in the cause, they must find for the defendant." This charge the court re-fused to give, and defendant excepted.

The defendant then "asked the court, in writing, to charge the jury, that if the facts as to the arbitration and award were fully and truly stated by the plaintiff himself, in the testimony given by him as a witness, the jury ought to find for the defendant." This charge the court refused to give, and defendant excepted. The defendant also "asked the court to charge the jury, in writing, that if the facts as to the arbitration and award were fully and truly stated by the defendant, in his testimony given as a wit-ness, the jury ought to find for the defendant."

The charge given, and the refusal to give the charges asked, are now assigned for error.

RICE, SEMPLE & GOLDTHWAITE, and A. J. WALKER, for ap-pellant.

FALKNER & HENLY, and WATTS & TROY, contra.

B. F. SAFFOLD, J.—The complaint is in the terms of the form prescribed by the Revised Code on a dependen

covenant or agreement. The demurrer was, therefore, properly overruled. The third ground of objection, that the property referred to is insufficiently described, can not prevail, because a precise identification of the property is not a material inquiry in the case, unless made so by plea.

The charge given at the request of the plaintiff was correct. Whether the information given by the plaintiff to the Confederate quartermaster ought, under other circumstances, to affect his right to recover, it was made known to the defendant before his agreement with the plaintiff. Both acted with a full knowledge of the consequences to be apprehended on that account.

All of the charges asked by the defendant were properly refused. The proposition of the defendant to bring the horse to the place of arbitration, that he might deliver him, if required to do so, and its declination by the plaintiff before the decision of the arbitrators, was not a delivery. It might have been so construed by the jury if made afterwards.

The testimony of the plaintiff, that the award required the defendant to deliver the horse, can not be considered as a failure to prove that he was not to deliver the other articles claimed, when taken in connection with the testimony of both parties that the plaintiff lost them, and they came into the possession of the defendant, with the horse, and were demanded of him by the plaintiff, without objection on his part. Even if this were not so, as the verdict was not obliged to be for the value of all the property claimed or none, we can not presume that it was not erroneously for all, when the defendant failed to take advantage of any defect of proof, by asking specific charges.

The judgment is affirmed.

NOTE BY REPORTER.—Afterwards, appellant, by RICE, SEMPLE & GOLDTHWAITE, applied for a rehearing, and filed in support thereof the following argument:

It is a universal rule that under a count upon a *special contract*, the plaintiff can not recover without proving, in substance, the very contract described in the count. It is

also a fixed rule, that a plaintiff may defeat a recovery by him, by *unnecessary particularity* in *describing the cause of action* in his count. The law holds him sternly to the proof of matter of *description*, although the description was *unnecessarily particular.*—*Dill v. Rather*, 30 Ala. 57; especially in the paragraph next before the last of the opinion in that case, and see cases there cited. This rule holds good in equity as well as in law.—*McKinley v. Irvine*, 13 Ala.

Appellant contends, that under a count upon a special contract, the plaintiff can not recover, if the proof only shows a contract *materially* different in any respect whatever from the contract as described in the count. Here the variance is perfectly plain. The count describes the contract as one embracing four articles, to-wit, a horse, a bridle, a sheep-skin, a saddle. The contract, as proved by each witness, was one which did not embrace the *four* articles named, but only *one of them,* to-wit, the horse. There can not be, in legal contemplation, a clearer case of variance between the *contract as described,* and the contract as *proved* by both witnesses.

The charges asked by the defendant are all founded on the well settled law of variance between the *allegata* and *probata,* and if Chitty and all the other authorities are right, these charges ought to have been given.

Chitty states the general rule as follows : "The contract must be stated correctly, and if the evidence differ from the statement, *the whole foundation of the action fails.*"— 1 Chitty's Pl. 305, *et seq.; Moseley v. Wilkinson*, 18 Ala. 288; *Jordan v. Roney*, 23 Ala. 758 ; *Smith v. Causey*, 38 Ala. 665 ; Greenleaf on Ev. p. 74, § 63, 12 ed.

The legal proposition, thus stated by Chitty, is precisely the proposition which, in substance, is announced and applied in the charges asked.

The plaintiff was at liberty to sue for all the articles, or for a portion only. But if he elected to proceed for all, and to state the contract (that is the submission to arbitratration) as embracing *all of these,* he can not recover *under such statement,* any one of them, when the proof of each witness showed that the contract embraced *only the horse. There was never any submission as to the other articles ;* and

in suing *on the submission and award*, the plaintiff was bound to state the same *"correctly."* This he did not do ; and by the charges asked the defendant took advantage of the incorrect statement. The law allows this to the defendant ; and it is done properly.

SAFFOLD, J.—The application for a rehearing is based on the allegation that a verbal contract, by which the appellant, on certain conditions, was to deliver up to the appellee, a horse, bridle, saddle, and sheep-skin, is not sustained by proof of an award that a horse only was to be delivered.

The doctrine of variance is that the allegations and proof must not be different and contradictory. In this case, the evidence of the appellant as much confirms the allegations of the complaint as that of the appellee. Immediately after the award was made, the plaintiff demanded of the defendant all of the articles claimed in this suit. The latter admits the demand, and testifies that he had them. They were rather incidental to the horse, and, from all the evidence, we can not say the jury was not authorized to find that they were understood to be included in the award.

We still do not think the evidence justified the first two charges asked by the defendant. The last two rested the case, first, on the plaintiff's testimony alone, and next, on the defendant's alone. We think, whether either one separately made out the case or not for the plaintiff, both together did.

The rehearing is denied.