## WILKINSON vs. MOSELEY.

1. It is often a matter of difficulty to determine whether an action is in form *ex contractu* or *ex delicto*. Perhaps the best criterion is this; if the cause of action, as stated in the declaration, arises from a breach of promise, the action is *ex contractu*, but if from a breach of duty, growing out of the contract, it is in form *ex delicto*, and *case*.

2. But whether an action be in form assumpsit or *case*, the proof must correspond with the declaration. Where, therefore, the declaration alleges merely the hiring of a slave and the promise of the defendant to treat the slave with care in case of sickness and to call in a physician, if necessary, and from the non-observance of these promises, deduces the plaintiff's right to recover, proof that the slave was hired in a particular place and for a particular service, and that it was a term of the contract that the slave should not be re-hired and sent from that place, or be employed in a different service, is variant from the declaration, and will not authorise a recovery.

3. Where one hires a slave for a limited time, and fails at the expiration of the term to re-deliver him to the owner, he is *prima facie* liable for his value; but if it be shown that the slave has died during the term for which he was hired, it devolves on the owner to show that the death resulted from a violation of duty on the part of the hirer.

ERROR to the Circuit Court of Montgomery. Tried before the Hon. Thomas A. Walker.

THIS was an action by the defendant against the plaintiff in error. The declaration contains two counts. The first alleges in substance that on the first day of February 1844, the plaintiff hired to the defendant a negro girl, by the name of Adaline, for one year, for a reasonable reward to be paid to the said plaintiff for her services, and in consideration thereof, the defendant un-

dertook and promised that while said girl was under his charge and control according to the terms of hiring, he would treat her in a careful, proper, and moderate manner, and in case of sickness, that she should receive careful and proper treatment, and, if necessary, that he would employ a physician to attend her, and that afterwards, the said girl became sick and required careful attention, medical treatment, and the care and attention of a physician; yet the said defendant, not regarding his promise and undertaking, would not bestow careful attention on said girl, nor afford her proper treatment, and did not, nor would employ a physician to attend her, and by means of the defendant's carelessness and neglect, and for want of the care and treament of a physician, the girl died. The second count resembles the first in all the material averments, except that it is not alleged that the defendant undertook to employ a physician to attend the girl in case of sickness, but it avers that he promised to treat her with proper care and attention, and that she died from neglect.

The evidence conduced to show that the plaintiff hired the girl to the defendant about the time alleged, as a cook. The plaintiff and the defendant resided in the city of Montgomery, and the plaintiff, during the negotiation, informed the defendant that his reason for hiring the girl in Montgomery was, that it was more healthy in the city than in the country, and that he had for some years preceding hired her in the country, but had determined that year, to hire her in town. It appeared that after a few months, and before the term of hiring expired, the defendant re-hired the girl to one A. B. Hughes, without the knowledge or consent of the plaintiff; that Hughes lived about four miles from Montgomery, and the girl was put to work in the field, and that she was there taken sick, and the overseer of Hughes gave her medicine, and treated the case until she died, no physician having been called in to attend her. Physicians were examined as to the disease and the propriety of the treatment, but it was uncertain from the testimony whether the treatment of the overseer was proper or not.

The court instructed the jury, first, that if the girl was hired to the defendant, to be kept in Montgomery, to be used as a cook, and he, without the permission or assent of the plaintiff, re-hired her to Hughes, to be taken to the country, and Hughes there employed her in a different manner, and for a different

purpose than those agreed on by the plaintiff and the defendant, and the girl died, it was such a breach of duty on the part of the defendant as made him liable. Secondly, that if the hiring by the plaintiff to the defendant was not special, then it was the duty of the defendant to show affirmatively that the overseer of Hughes had treated the girl with his (Hughes') knowledge and consent, and in the same way that a skilful man would have treated her, and if the defendant had not proved this to their satisfaction, he was liable.

The charges of the court are, among others not noticed in the opinion, the errors now assigned.

WILLIAMS & PRYOR, for the plaintiff in error:

1. A variance between the proof and the contract declared on, is fatal.—McLendon v. Godfrey, 3 Ala. 181; Jaureme v. Baker, 5 Wend. 301; Connry v. Porter, 2 East. 2; White v. Wilson, 2 Bos. & Pull. 116; Burton v. Wright, 2 Doug. 665, and see Churchill v. Wilkins, 1 Term R. 447, and Crawford v. Morrell, 8 Johns. 253.

2. The rule is the same whether the action be assumpsit, or a special action on the case.—Livingston v. Cox, 6 Barr, 360; Bank of Orange v. Brown, et al. 3 Wend. 158.

3. The second charge of the court was erroneous. After the death of the slave was shown, the burden of proof was on the plaintiff to show that the defendant had occasioned it by a violation of his duty.—Story on Bailments, §. 410; Cooper vs. Barton, 3 Camp. 5, note.

ELMORE & BELSER, for the defendant.

1. The placing of the slave on Hughes' plantation, amounted to a conversion of her by Wilkinson.—8 Leigh, 566-7; Meigs R. 459; 2 Pick. 613; 9 Lou. 213; 1 Cow. 322; Story on Bailments, 263, and 272, § 397, and 413.

PARSONS, J.—It is often a matter of difficulty to determine whether an action is in form *ex contractu* or *ex delicto*. Perhaps the best criterion is this; if the cause of action, as stated in the declaration, arises from a breach of promise, the action is *ex contractu;* but if the cause of action arises from a breach of duty, growing out of the contract, it is in form, *ex delicto* and *case.*

For instance, if the declaration allege the hiring of a horse to ride to a certain place, and that the defendant rode him so immoderately that he died, this would be *case;* for the contract of hiring imposed upon him the duty to ride in reason, or not unreasonably fast; but if the declaration allege the hiring, and that he promised to ride with reasonable speed, but not regarding his promise he rode the horse immoderately, whereby he died, the action may be considered assumpsit. So the duty or obligation of one, who hires a slave. is, to trea thim with care, and should the hirer, in violation of that duty, over-work the slave, or refuse to furnish him with suitable provisions, in consequence of which he dies, the owner may sue him, and declare either in assumpsit or *case;* if he declare in assumpsit, the declaration must allege a promise to work the slave reasonably and to furnish him with suitable provisions, and then a breach of that promise; but if he declare in *case*, it will be sufficient to allege the hiring and the tortious conduct of the hirer, whereby the death of the slave occurred. This we think to be the result of all the cases. But whether the action be in form assumpsit or *case*, it is beyond doubt certain that the proof must correspond with the declaration. Mr. Chitty says, " that in an action on the case, founded on an express or implied contract, as against a carrier, attorney, agent, inn-keeper, or other bailee, for negligence, the declaration must correctly state the contract, or the particular duty, or consideration, from which the liability results, and on which it is founded, and that a variance in the description of the contract, though in an action *ex delicto*, may be as fatal as if it were *ex contractu.*—Chitty's Pl. vol. 1, 384. In this, we think, the author is fully supported by the cases of Ireland v. Johnson & Vaughn, 1 Bing. N. C. 162; 3 Brod. & Bing. 54; and many others that might be cited. Whether the plaintiff in declaring in *case* on a duty growing out of the contract is bound to set out all the contract, or only that portion of it, out of which the duty arises, it is not necessary to decide. We should, however, be inclined to think that it would not be necessary in every case to set out the entire contract, but that so much of it as showed the duty imposed thereby on the defendant would be sufficient. Yet it is very clear that the acts or omissions of the defendant, which are insisted on as a tortious violation of the duty imposed by his contract, must be proved

as alleged; otherwise we should depart from the well settled rule that the *allegata* and *probata* must correspond.

Testing the declaration and the proof by this rule, we are clear in the opinion that the court erred in the first charge given to the jury. This was, that if the girl was hired, to be kept in the city of Montgomery, and to be employed as a cook by the defendant, and without the permission or assent of the plaintiff, he re-hired her to Hughes, to be taken to the country and employed in a different manner, it was such a breach of duty as rendered the defendant liable. Now if it be admitted that the evidence warranted this charge to the jury, yet it is certain that the declaration contains no averment, that it was a term of the contract of hiring, that the defendant should not re-hire the slave to go to the country, or to be otherwise employed than as a cook. The declaration alleges merely the hiring and the promise of the defendant to treat her with care in case of sickness, and should it be necessary, to call in a physician, and the right of the plaintiff to recover is based by the declaration on the non-observance of these promises. The court, however, instructed the jury, that if the evidence showed that it was a term of the contract that the slave should not be re-hired to go out of the city, and be employed in a different service, the plaintiff could recover. If this be correct, he would be permitted to recover on the violation of a term of the contract not set forth in the declaration, and even where no term of the contract, as described in the declaration, had been violated. To allow this would simply amount to permitting a plaintiff to declare for one thing, and to recover for another.

We think the second instructions of the court were also erroneous. It is true that if one hire a slave for a limited time, and fails to deliver him back to the owner at the expiration of the term of hiring, he would be *prima facie* liable for his value; for it is a duty imposed by the contract, that he will re-deliver the slave to him at the expiration of the term. Yet if the defendant showed that the slave had died during the term of hiring, this would acquit him, unless it was shown in reply that the death of the slave was the result of some violation of duty, imposed on the defendant by the terms of the contract; but if the death of the slave alone be shown by the defendant, the burthen of proof is on the plaintiff to show that the death resulted from a violation of

duty on the part of the defendant. It may, however, often happen in practice, that the proof introduced to show the death will also show the circumstances under which it took place, and it is then for the jury to determine, under all the proof, whether the death was the result of the violation of duty on the part of the defendant, or whether it was from causes beyond his control.

This view shows that the judgment must be reversed and the cause remanded for another trial, and we deem it unnecessary to decide any other of the many questions presented by the assignments of error, as they will not probably arise precisely under the same circumstances upon a future trial. If the declaration should be amended, and the proof should show that it was a term of the contract of hiring that the slave should not be re-hired out of the city of Montgomery, it will then be time enough to decide, whether the violation of that term of the contract would render the defendant liable. It may be remarked, however, that the cases, refered to by the counsel in argument, will probably guide the court correctly, should it become necessary to decide that question on another trial. Let the judgment be reversed, and the cause remanded.