Joseph A. FAGAN, Plaintiff,

v.

SUNBEAM LIGHTING CO., INC., EASTERN, a California Corporation, and Ken Glaesner, Defendants.

No. P-3027.

United States District Court

S. D. Illinois, N. D.

Aug. 15, 1969.

John E. Cassidy, Jr., Peoria, Ill., for plaintiff.

John F. Dolan, Peoria, Ill., for defendant Sunbeam Lighting Co.

## OPINION AND ORDER

ROBERT D. MORGAN, District Judge.

This is a private antitrust suit for treble damages arising under the Commerce and Trade Laws of the United States, 15 U.S.C. § 1ff. Jurisdiction is founded on 28 U.S.C. § 1337. The case is presently before the court on defendant Sunbeam's motion, under F.R.C.P. 12(b) (6), to dismiss the complaint because of plaintiff's "failure to state a claim upon which relief can be granted," or, in the alternative, to strike portions of the complaint. Defendant Glaesner has never been served with summons.

The allegations of the complaint, which are taken as true for purposes of this motion, state that the defendant Ken Glaesner is the Eastern Regional Manager of the defendant corporation; that the plaintiff was a sales representative of the defendant corporation by an agreement which states in pertinent part that:

"1. The Company does hereby appoint * * * (Fagan) its exclusive Sales representative for * * * the following described territory * * *.

* * * * * *

"2. The terms of the agreement shall commence on the date hereof and continue until terminated by either party upon the giving of thirty (30) days prior notice * * *.

"3. (a) * * * He shall not be precluded from handling other lines or acting as Sales Representative for other companies, provided, however, that he shall not during the term of this Agreement maintain any connection, directly or indirectly, of any kind, with any person, firm, or corporation which is engaged in competition with the Company.

* * * * * *

"4. The authority of the Sales Representative shall be limited to soliciting orders for the Company's lighting fixtures at the prices and on the terms * * * established by the Company

* * *. The Sales Representative shall have no power or authority in any manner to obligate or bind the Company * * *. The Sales Representative is expressly declared not to be an agent of the Company and is and shall be in all respects an independent contractor.

* * * * * *

"14. This Agreement has been executed in the * * * State of California, and shall be interpreted according to the laws of the State of California. * * * The statute of limitations on any claim of Sales Representative against Company shall be six (6) months from the date of termination or the occurrence of the claim, whichever is earlier."

Plaintiff, during the contract period, did represent companies with similar products to those of defendant and by reason thereof the defendant corporation terminated the "Sales Representative Agreement" on or about August 2, 1968.

Plaintiff argues that the agreement and conduct of the defendants operated as a conspiracy in restraint of interstate commerce, tending to lessen competition since the plaintiff was compelled to refrain from representing manufacturers and distributors of similar products, and creating a monopoly for the defendants within the Southern District of Illinois, to the plaintiff's damage in excess of $100,000.

The defendant Sunbeam argues that the claim alleged herein is barred by the six-month limitation provision of the contract pleaded. The contract states that the agreement shall be interpreted according to the laws of the State of California where the agreement was executed. Said defendant cites numerous cases from California and several federal cases which hold that a six-month contractual limitation period is reasonable and valid.

█ This court might agree that the limitation is reasonable and valid if the action were a suit upon the contract or for breach thereof. The action be-

fore this court, however, is based upon federal public policy as expressed in the antitrust laws of the United States. The contract is simply offered as evidence of the alleged violation of that policy. An action to recover treble damages under the Clayton Act is a civil remedy sounding in tort. Clark Oil Co. v. Phillips Petroleum Co., 148 F.2d 580 (8th Cir.1945) cert. denied, 326 U.S. 734, 66 S.Ct. 42, 90 L.Ed. 437 (1945). It is clear that federal law controls in determining whether the action was properly commenced. Moore Co. v. Sid Richardson Carbon & Gasoline Co., 347 F.2d 921 (8th Cir.1965), cert. denied, 383 U.S. 925, 86 S.Ct. 927, 15 L.Ed.2d 845 (1966), rehearing denied, 384 U.S. 914, 86 S.Ct. 1335, 16 L.Ed.2d 367 (1966). The lack of uniformity in state statutes of limitations was the prime factor which motivated Congress to enact the four year statute of limitations applicable to private antitrust litigation. Kansas City v. Federal Pacific Electric Co., 310 F.2d 271 (8th Cir.1962), cert. denied, 371 U.S. 912, 83 S.Ct. 256, 9 L.Ed.2d 171, (1962), rehearing denied, 373 U.S. 914, 83 S.Ct. 1297, 10 L.Ed.2d 415 (1962). Because of the nature of this action and to be consistent with the spirit of uniformity, the limitation period of four years contained in 15 U.S.C. § 15b must be applied and the commencement of this action was well within that period.

█ Second, the defendant Sunbeam argues that venue is improper and therefore the action should be transferred to another district. There were no specific grounds argued for transfer, but it appears that the defendant's basis is either that California was the state of execution, or that since the contract provided that California law be applied, California is the proper forum. This court does not consider either ground sufficient to override plaintiff's choice of forum. This court may be bound to apply California law in any construction of the contract, but the federal antitrust laws govern venue of an action thereunder. Section 12 of the Clayton Act en-

larged the local jurisdiction of the district courts so as to establish the venue of a suit not only in a district in which the corporation resides or is found, but also in any district in which it transacts business. Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927). In *Eastman* the court stated (273 U.S. at 374, 47 S.Ct. at 404) that:

"* * * since it appears * * * that the defendant, in a continuous course of business, was engaged, not only in selling and shipping its goods to dealers within the Georgia district, but also in soliciting orders therein through its salesmen and promoting the demand for its goods through its demonstrators for the purpose of increasing its sales, we conclude that it was transacting business in that district, within the meaning of section 12 of the Clayton Act, * * *."

Also in *Eastman*, the court, referring to cases previously decided, stated (273 U.S. at 373, 47 S.Ct. at 403) that:

"a corporation engaged in the solicitation of orders in a district was in fact 'doing business' therein, although not in such sense that process could be there served upon it."

It is clear by the contract under which the plaintiff was retained that the defendants in a continuous course of business did solicit orders for the sale and shipment of goods into this district, as well as promote their products through the use of a sales representative within this district. Therefore, venue is clearly proper in this district court.

■ Third, the defendant Sunbeam argues that the action is barred under a paragraph of the alleged contract which provides that acceptance by a sales representative of his commission checks amounts to a waiver of all claims against the corporation to the date of said checks. It is the defendant's position that since this plaintiff has accepted all his checks due, he is barred from maintaining this action. It suffices to reiterate that this action is not founded upon the contract, but upon federal public policy as expressed in the antitrust laws of the United States; therefore, the contract provision is not a bar to the action.

The final argument, and the critical issue before this court is whether the plaintiff has alleged facts sufficient to show that the defendant has done something forbidden by the antitrust laws which injured the plaintiff in his business or property.

The antitrust laws, 15 U.S.C. § 1ff, involved herein, state in pertinent part that:

§ 1. "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce * * * is declared to be illegal: * * *.

§ 2. "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade of commerce among the several States, * * * shall be deemed guilty of a misdemeanor * * *.

§ 14 "It shall be unlawful for any person engaged in commerce, * * * to lease or make a sale or contract for sale of goods * * * on the condition * * * that the lessee or purchaser thereof shall not use or deal in the goods * * * of a competitor or competitors of the lessor or seller * * *.

§ 15. "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor * * * and shall recover threefold the damages by him sustained * * *."

It is clear that the plaintiff herein was a sales representative retained by the defendant company in its vertical chain of distribution, as opposed to a dealer in or retailer of the company's products. This is abundantly shown not only by the terms of the alleged contract, but also by the fact that he is alleged to have been retained and connect-

ed to the defendants only by that alleged contract.

The plaintiff argues that the antitrust laws are public in purpose and prohibit certain specific results, irrespective of what the relationship between the parties is called; that in keeping with this purpose, the provisions of the alleged contract as quoted hereinabove, taken collectively, violate Sections 1 and 2 of the Sherman Act. In support of this position, plaintiff cites Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968), in which *dealers* were obligated to: (1) purchase all their mufflers from the company defendant; (2) sell the mufflers at resale prices fixed by the company; (3) refrain from dealing with any of the supply company's competitors; (4) exclusively sell the company's products within a defined territory. While the Supreme Court in that case decided that the doctrine of *in pari delicto* was not a defense to that private antitrust action and remanded the case for trial, without deciding that defendant was guilty of any antitrust violation, it is apparent that the court considered that a cause of action had been stated. The *Perma Life Mufflers* facts are clearly distinguishable, however, from those in the cause before this court. In *Perma Life Mufflers* the restraints were upon retail dealers; contradistinctively, the restraints alleged herein were upon a person within the defendant company's own vertical chain of distribution and this distinction is critical. Only in the former situation is the law clear that such allegations, if proved, constitute a violation of the antitrust laws of the United States. *Perma Life Mufflers*, therefore, is not dispositive of the case and motion before this court.

Beginning with Standard Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911), the Supreme Court has consistently construed the Sherman Act as prohibiting only *unreasonable* restraints of trade. The defendant maintains that a manufacturer who does not part with title, dominion or risk of loss of his product, may impose restrictions on the distribution of that product, as well as determine his selling price without creating an unreasonable restraint of trade within the construed meaning of the Sherman Act. This being true, the defendant argues, the allegations of the complaint are not sufficient to state a claim upon which relief can be granted and the cause should be dismissed.

In United States v. Arnold Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L. Ed.2d 1249 (1967), the Supreme Court set out the proper scope of analysis applicable to the case before this court when it stated (388 U.S. at 375–376, 87 S.Ct. at 1864) that:

> "restraints as to territory or customers, vertical or horizontal, are unlawful if they are 'ancillary to the price-fixing' * * * or if the price fixing is 'an integral part of the whole distribution system' * * *. In those situations, it is needless to inquire further * * *. At the other extreme, a manufacturer of a product other and equivalent brands of which are readily available in the market may * * * 'franchise' certain dealers to whom, alone, he will sell his goods, * * *. It is within these boundary lines that we must analyze the present case."

■■ The threshold inquiry, therefore, is whether there is a sufficient allegation of price fixing here. If the restrictions in the alleged contract were part of a scheme involving unlawful price fixing, the result would be a *per se* violation of the Sherman Act. It is manifest that unlawful price fixing is "the fixing of prices at which others may sell." 388 U.S. at 376, 87 S.Ct. at 1864. It is clear from the allegations of the complaint that such activity is not involved in this case. The defendants herein did not attempt to fix the price at which the plaintiff or others could sell Sunbeam products which they had acquired; rather, they simply controlled the price at which they, themselves,

would sell Sunbeam products initially and required the plaintiff to quote those prices. This type of price control, by a manufacturer in the first sale of his product, is not the kind that the antitrust laws seek to prohibit. Thus, the restrictions imposed do not in themselves, and nothing more is alleged, constitute a *per se* violation of the Sherman Act.

■ With the price fixing and violation *per se* issues determined, this court must decide whether the plaintiff has alleged sufficient facts to show that the alleged contract, tested by a "rule of reason," constitutes an unreasonable restraint of trade.

The court in *Schwinn* established the rule (388 U.S. at 379, 87 S.Ct. at 1865) that:

"If the manufacturer parts with dominion over his product or transfers risk of loss to another, he may not reserve control over its destiny or the conditions of its resale."

This court is fully satisfied, on the allegations here, that the defendant company did retain dominion and risk of loss of its products by the terms of the alleged contract, title did not pass and the orders of the plaintiff were not binding upon the company until "accepted by it at its principal office." The plaintiff had "no power or authority in any manner to obligate or bind the Company," thus both the dominion and risk of loss must have remained with the defendant, as well as title to the goods. The court in *Schwinn* went on to state (388 U.S. at 380, 87 S.Ct. at 1866) that:

"Where the manufacturer retains title, dominion, and risk with respect to the product * * * it is only if the impact of the confinement is 'unreasonably' restrictive of competition that a violation of § 1 results from such confinement, unencumbered by culpable price fixing."

The court clearly distinguishes between those situations in which the manufacturer parts with dominion and risk of loss and those situations in which the manufacturer does not. Where there is a loss of dominion and risk coupled with restrictions as set out in the plaintiff's complaint, a violation of the antitrust laws is stated. Where, however, the manufacturer retains dominion and risk of loss, the mere allegations of restrictions is insufficient to show a violation of the antitrust laws. See, United States v. Arnold Schwinn & Co., 388 U. S. 365, 87 S.Ct. 1856 (1967). This distinction is critical in considering what allegations are sufficient to establish a cause of action in the first situation and what additional allegations are required to state a cause of action in the second situation. It seems clear that where, as here, the manufacturer retains dominion, title and risk of loss of his products, mere allegations of restrictions in the vertical chain of distribution, standing alone, are not sufficient to state a claim upon which relief can be granted.

■ One last point need only be treated summarily. 15 U.S.C. § 14 prohibits a person from selling or leasing goods upon the condition that the purchaser or lessee not deal in competing goods. It should suffice to observe that the alleged arrangement between the plaintiff and the defendants herein involved neither a lease nor a sale situation. It is unnecessary to consider whether the prohibition in Paragraph 3(a) of the contract here violates the provisions of the Sherman Act (15 U.S. C. §§ 1, 2), since if the defendants' conduct involves, but does not violate, the broader proscription of 15 U.S.C. § 14 (which is Section 3 of the Clayton Act), it necessarily follows that the conduct is not forbidden by the Sherman Act. Tampa Electric Co. v. Nashville Coal Co., 365 U.S. 320, 335, 81 S.Ct. 623, 5 L. Ed.2d 580(1961).

Since no violation is alleged, it is unnecessary to consider the question of plaintiff's possible damage.

For the reasons stated, the plaintiff has failed to state a claim upon which relief can be granted. Accordingly, the motion is allowed and the complaint is

hereby dismissed. As noted at the outset, the defendant Glaesner has never been served with process. Plaintiff is allowed 20 days within which to file an amended complaint, if he considers that a cause of action against these defendants does exist in the light of this opinion.