311 So.2d 299

**Charles A. TWINE, Jr.**

v.

**LIBERTY NATIONAL LIFE INSURANCE CO.**

**SC 1022.**

Supreme Court of Alabama.

April 10, 1975.

J. Richard Carr, Gadsden, for appellant.

Hubert Burns, Gadsden, Ira L. Burleson, Ralph B. Tate, Birmingham, for appellee.

MERRILL, Justice.

This appeal is from a judgment granting defendant's motion for summary judgment. We affirm.

Plaintiff is engaged in the funeral home business in Cherokee County and alleged that he "has been injured or damaged, directly or indirectly, by an unlawful trust combine or monopoly created and operated by the defendant." The amended complaint contained four claims. Defendant filed a motion to dismiss under Rule 12(b)(6) ARCP. Prior to a hearing on or response to this motion, defendant amended it with supporting affidavits and other documents and asked that the amended motion be treated as one for summary judgment pursuant to the provisions of Rule 12(b) and 56 ARCP. After oral argument on the motion, the trial court determined that defendant's motion should be granted unless the plaintiff, within ten days from the date of the ruling, filed additional pleadings or counteraffidavits to overcome or refute the matters presented in support of the amended motion.

Plaintiff filed his affidavit. The court overruled the motion to dismiss on May 10, 1974. Defendant filed a motion to set aside the May 10th order. On July 25, 1974, the court, after a hearing, rescinded the May 10th order, and granted defendant's motion for summary judgment.

Plaintiff says that the action was brought under Tit. 7, § 124, Code 1940, which (as stated in brief) "provides that any person, firm or corporation can bring a suit for damages caused by an unlawful trust, combine, or monopoly."

### Claim One

The alleged unlawful activity consisted of restrictions on trade contained in funeral policies and vault policies. Provisions from each type policy are quoted in the complaint, but there is no material difference except as to purpose, and only the

contested paragraph in funeral policies is quoted here:

"'AUTHORIZED FUNERAL DIREC-TOR—We have authorized various funeral directors throughout Alabama to furnish the funeral benefit provided by this policy, and such benefit is to be furnished only by an authorized funeral director. As used in this policy "Authorized Funeral Director" means a funeral director authorized by us at the time of your death. "Retail Value", as used in this policy, refers to the retail prices charged by authorized funeral directors. We will furnish you upon request the names and addresses of all authorized funeral directors.'"

The contention is that the policies should not be restricted to authorized dealers.

This is required by statute. The Alabama Insurance Code, Acts of Alabama 1971, p. 709, and listed in the 1958 Recompilation as Tit. 28A, §§ 1–759, provides in Chapter 17, Burial Insurance Policies, as follows:

"§ 393. Certain provisions required. —No policy of burial insurance shall be delivered or issued for delivery in this state unless it contains in substance the provisions set forth in sections 394 through 405, or corresponding provisions which in the opinion of the commissioner are not less favorable in any respect to the policyholder. Any of such provisions or portions thereof not applicable to single premium policies shall to that extent be omitted therefrom."

And § 398 provides in pertinent part:

"There shall be a provision [in the burial insurance policy] that the insurer has contracted with and appointed an authorized funeral director or monument dealer in this state to furnish the merchandise and services provided by the policy. The policy may also provide that the term 'authorized funeral director' or 'authorized monument dealer' shall mean a funeral director or monument dealer

authorized by the insurer at the time of the insured's death."

The contested paragraph in the policy quoted supra shows that it contains substantially the required provisions. The affidavit of William T. Graves, Vice President of Liberty National, states that policies containing the "restraint of trade" provisions were approved by the Commissioner of Insurance of Alabama. This was not denied or controverted by plaintiff's affidavit. The affidavit of Charles Healey, President of Brown-Service Funeral Homes Company, Inc., stated that the "authorized funeral director" required under the policy were those independent funeral directors throughout the State of Alabama with whom Brown-Service, a wholly-owned subsidiary of Liberty National, has contracted to provide the services under such policies. This fact was not denied by plaintiff.

 There can be no legal claim for damages to the person or property of any one except as it follows from the breach of a legal duty. Pickett v. Matthews, 238 Ala. 542, 192 So. 261, and whatever damage results from doing that which is lawful does not lay the foundation of an action. Randle v. Payne, 39 Ala.App. 652, 107 So. 2d 907, cert. denied 268 Ala. 697, 107 So.2d 913.

In Alabama Power Co. v. Alabama Electric Cooperative, 394 F.2d 672 (5th Cir.), cert. den. 393 U.S. 1000, 89 S.Ct. 488, 21 L.Ed.2d 465, the court stated that "The Supreme Court has repeatedly held that, 'where a restraint upon trade or monopolization is the result of valid governmental action, as opposed to private action, no violation of the [Sherman] Act can be made out. United States v. Rock Royal Co-op, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446, Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315.' Eastern R. Conf. v. Noerr Motors, 1961, 365 U.S. 127, 136, 81 S.Ct. 523, 529, 5 L.Ed.2d 464." "These decisions rest upon the fact that under our form of government the question whether

a law of that kind should pass, or if passed be enforced, is the responsibility of the appropriate legislative or executive branch of government so long as the law itself does not violate some provision of the Constitution." *Noerr Motors,* supra.

■ Here, defendant did no more than the statute required. There is no merit in Claim One.

### Claim Two

The unlawful activity charged in Claim Two was price fixing. Plaintiff charged that the defendant owned Brown-Service, and had contracted with Brown-Service to service its burial insurance policies; that Brown-Service had contracted with plaintiff's competitors in Cherokee and surrounding counties, and a copy of the contract with his competitors was attached as Exhibit A.

Since the only affidavit supporting plaintiff's complaint was his own, we copy the body of the affidavit in which he said:

"1. That he is a resident citizen of Cherokee County, Alabama, the plaintiff of this lawsuit, over the age of twenty-one years, and a member of the black race.

"2. That he is engaged in the funeral home business under the name of Twine's Funeral Home in Cherokee County, Alabama.

"3. That the population of Cherokee County, Alabama, is approximately 15,000 people, including men, women and children. Further, that a great majority of the adult citizens of Cherokee County, both black and white, are covered by a burial policy issued by the defendant.

"4. That he cannot remain in the Funeral Home business unless he has an opportunity to bury people who die and who were covered by a burial policy issued by the defendant at the time of their death.

"5. That unless he will enter into a contract with the Brown Service Funeral Homes Company, Inc., to be a contract mortician, the defendant will not pay him when he buries a person who was covered by one of their policies.

"6. That the said contract is in restraint of trade in that it prohibits him from effectively competing for a majority of the business in which he is engaged.

"7. That if he enters into the contract and becomes a contract mortician, that said contract then fixes the prices of the funeral. Plaintiff would be paid the sum set out in the contract for performing the funeral, rather than the amount that he would normally charge for such a funeral.

"8. That if he became a contract mortician, he would be defrauding the public in that the policy holder would think he was getting a $300.00 funeral when, in fact, he would be getting a $95.00 funeral, which is all the defendant would pay the plaintiff for performing a $300.00 funeral.

"9. That if he entered into said contract, he would be forced out of business, in that he cannot provide a $300.00 funeral for $95.00, or a $600.00 funeral for $150.00, as provided in said contract.

"10. That the defendant, by monopolizing the funeral service business in Cherokee County, and by refusing to pay the face value of the policy and by refusing to pay the plaintiff when he services one of their policies, has injured or damaged the plaintiff directly and indirectly.

"11. That said activity is an unlawful trust, combine or monopoly, and that same was created and operated by the defendant.

"12. That the contract between Liberty National Live Insurance Company and its wholly owned subsidiary,

Brown-Service Funeral Homes Company, Inc., and the contract between Brown-Service Funeral Homes Company, Inc., and its authorized funeral directors is in restraint of trade in that it extinguishes all competition and in that it fixes the prices of funerals in Cherokee County, Alabama.

"13. That said contracts are aimed at creating an absolute monopoly for the black funeral home business in Cherokee County, Alabama, to the end that black people who have $300.00 and $600.00 funeral policies with the defendant and expect to be furnished a funeral of that caliber, will be furnished instead a $95.00 funeral or a $150.00 funeral.

"14. That the above facts are true and correct."

■ It is an accepted principle of business law that any seller may determine the price at which he will sell his own product or service and any buyer may determine what he is willing to pay for any product or service.

The distinction between a purchaser and seller agreeing upon the price that they will pay or sell, and the price fixing which is condemned by the antitrust laws, is pointed out in Fagan v. Sunbeam Lighting Co., 303 F.Supp. 356, 360 (D.C.Ill.1969):

"The threshold inquiry, therefore, is whether there is a sufficient allegation of price fixing here. If the restrictions in the alleged contract were part of a scheme involving unlawful price fixing, the result would be a *per se* violation of the Sherman Act. It is manifest that unlawful price fixing is 'the fixing of prices at which others may sell.' [United States v. Schwinn & Co.], 388 U.S. [365], at 376, 87 S.Ct. [1856], at 1864 [18 L.Ed.2d 1249]. It is clear from the allegations of the complaint that such activity is not involved in this case. The defendants herein did not attempt to fix the price at which the plaintiff or others could sell Sunbeam products which they

had acquired; rather, they simply controlled the price at which they, themselves, would sell Sunbeam products initially and required the plaintiff to quote those prices. This type of price control, by a manufacturer in the first sale of his product, is not the kind that the antitrust laws seek to prohibit. Thus, the restrictions imposed do not in themselves, and nothing more is alleged, constitute a *per se* violation of the Sherman Act."

The contract attached by plaintiff as an exhibit to sustain this allegation of price fixing is simply the form of an agreement used by Brown-Service to purchase the services of independent funeral directors and sets out the charges which Brown-Service will pay to the funeral director providing such services. This contract does not in any way fix the price which the plaintiff or any other funeral director may charge others for rendering funeral services. It expressly provides that a funeral director may furnish or contract to furnish funeral merchandise and services for any other person, firm or corporation. It expressly provides that the funeral director may establish prices for his funerals and vaults sold to others.

■ It is clear that the contract by which Brown-Service acquires the services of a funeral director does not fix the price at which the funeral director may sell his services to others, and it does not fix the price at which plaintiff may sell his services. It is simply a contract by which Brown-Service purchases the services of a funeral director and agrees upon the price to be paid therefor. This type of transaction is not condemned by the antitrust laws and is not price fixing within the meaning of the antitrust laws.

■ It is true that the complaint in Claim Two uses the words price fixing, but the exhibit clearly shows no price fixing. An exhibit made the basis of a cause of action or defense and contradicting the averments of the pleading of which it is a part will control such pleading. Wauga-

man v. Skyline Country Club, 277 Ala. 495, 172 So.2d 381; Ivey v. Wiggins, 271 Ala. 610, 126 So.2d 469.

There was no genuine issue of material fact as to Claim Two.

### Claim Three

The pertinent part of the claim follows:

"2. Plaintiff avers that when he conducts a funeral for a deceased person who was insured by a burial policy issued by defendant, the defendant refuses to pay him the proceeds of the said policy. That because the deceased was covered by a burial policy, the deceased's relatives refuse to pay plaintiff for the service and plaintiff is thereby deprived of a large portion of the funeral business, and freedom of competition is thereby destroyed."

The affidavits show that plaintiff was offered a contract to become an authorized funeral director but he did not enter into the contract and he concedes that he is not an authorized funeral director.

This contention was answered in Hunter v. Brown-Service Funeral Co., 241 Ala. 25, 200 So. 869. There, the policy named two "authorized undertakers." One of them, the plaintiff Hunter, terminated his relationship with Brown-Service and was not an authorized undertaker at the time of insured's death. The family of the policy holder took the policy to Hunter and he provided the services. The insurance company refused to pay him and he sued. The trial court rendered judgment for the company and this court affirmed, stating:

"Therefore, no recovery could be had for services rendered the third party in question. The appellee had no recourse against appellant, the latter on account of the contract wanting in mutuality, as it then was, and which cannot be enforced against ·appellee. Stewart's v. Redmond et al., 219 Ala. 365, 122 So. 315.

"All that is promised the insured is that the company, appellee, will furnish the merchandise and services promised either itself, or through its authorized undertaker (the undertaker who happens to be authorized as the one to represent the company at the death of the insured). All appellee's service contracts with undertakers must provide for termination by appellee upon reasonable notice. Appellant's contract of August 18, 1933, so provided and was terminated in accordance with such provisions, and in addition, appellant himself had abandoned said contract and made no claim that it still existed. The policy itself discloses that only an authorized undertaker of appellee could furnish the funeral merchandise and service called for in the policy, which means the undertaker who is appellee's 'authorized undertaker' at the time of performance by appellee, which is the death of insured. * * *"

In the instant case, plaintiff refused to become an authorized funeral director and insofar as Liberty National is concerned, he was a stranger to the contract and can take no advantage therefrom or enforce any legal complaint thereon.

The rule is that one not a party to, or in privity with a contract, cannot sue for its breach; and a stranger to a contract can take no advantage of a breach of any condition of the contract. Watson v. Mills, 275 Ala. 176, 153 So.2d 612.

Claim Three is without merit. The statute required the policy to name an authorized funeral director and no liability attached unless the policy was presented to an authorized funeral director.

### Claim Four

The pertinent part of this claim alleges:

"Plaintiff avers that because he is a black man, defendant refuses to pay him for a funeral service conducted for a deceased covered by a burial policy issued

by defendant, thereby depriving plaintiff of the right to earn a living without due process of law and violating plaintiff's civil rights as guaranteed by the Constitution of the United States."

■ This is another instance where the exhibits contradict and control the pleading. One of the "Standards of Acceptability of Contract Funeral Directors," a part of Exhibit A which was attached to plaintiff's Claims Two, Three and Four reads: "9. The funeral director must be of the Negro race." Also, in paragraph 3 of the exhibit, which was the contract which defendant urged plaintiff to accept in order to become an authorized funeral director, the statement appears that the policies are issued "upon the lives of persons of the Negro race under which the benefits are payable in merchandise and service incident to burial."

Charles Healey's affidavit states that Brown-Service has entered into funeral service contracts "with 77 black funeral directors throughout the State of Alabama." Plaintiff's affidavit, which was filed after defendant's affidavits, neither denies this statement nor does his affidavit support the allegation that Brown-Service refused to pay him because he was a black man.

■ Allegations contained in a complaint do not create an issue against a motion for summary judgment supported by affidavits. Smith v. Mack Trucks, Inc., 505 F.2d 1248 (9th Cir.); First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569; Tripoli Co. v. Wella Corp., 425 F.2d 932 (3rd Cir.), cert. den. 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed. 62.

In his affidavit, plaintiff refers in paragraphs 8, 9 and 13 to $300.00 funerals being worth only $95.00 and $600.00 funerals worth only $150.00. These figures come from paragraph 12 of Exhibit A which was the proferred contract which plaintiff did not accept. Paragraph 12 reads in pertinent part:

"The Homes Company agrees to pay the Funeral Director for the services performed by him as follows:

"A. Policies issued prior to January 1, 1970:

(a) which do not provide a metal casket $95

(b) which do provide a metal casket $180

"B. Policies issued on and after January 1, 1970:

(a) which provide benefits having a retail value of $300 $150

(b) which provide benefits having a retail value of $600 $300"

This is the schedule of payments to the funeral director for his *services*. The affidavits make it clear that Brown-Service, "The Homes Company," furnishes the funeral merchandise such as the casket and the funeral clothing. Then it pays the funeral director for the services listed in the policies, such as embalming and preparation of the body, a place where memorial services may be held, assistance in conducting the services and transportation of the remains of the deceased to the place of interment. The schedule listed in paragraph 12, supra, is the amounts paid for services and does not include the merchandise.

We think plaintiff has stated his real complaint in brief when he states that if he should enter into the proferred contract he gets paid according to their schedule "rather than what *he would normally charge* or *would like to charge for his funeral services*." (Emphasis supplied.)

Claim Four is without merit.

In Ex parte Rice, 258 Ala. 132, 61 So.2d 7, a case involving a charge of monopoly, this court said:

" * * * Allegation must be made of the acts done or proposed to be done under alleged circumstances and conditions sufficient to create or tend to create a monopoly contrary to such public interest,

and to show that the transaction in question is a material feature of it, in order that the court may determine from the facts so alleged whether a monopoly at common law or in violation of the statute has been properly set up and the relation of the transaction to it, with the result that if those facts are proven the party pleading them would be entitled to prevail. It is not sufficient to allege the existence of a monopoly, or merely to repeat the words of the statute, or to recite mere conclusions of the pleader. The general allegations that the combination and agreement are unlawful and illegal, and that the transaction in question is an integral part of the scheme are not sufficient nor that said contract has resulted in an unlawful monopoly. Foster v. Shubert Holding Co., 316 Mass. 470, 55 N.E.2d 772; 58 C.J.S. Monopolies, § 100, page 1122; Baker v. Lehman, Weil & Co., 186 Ala. 493(18), 65 So. 321."

To the same effect are Kinnear Weed Corp. v. Humble Oil & Refining Co., 214 F.2d 891 (5th Cir.), cert. den. 348 U.S. 912, 75 S.Ct. 292, 99 L.Ed. 715 (an antitrust action); Baim & Blank v. Warren-Connelly Co., D.C., 19 F.R.D. 108, and Alexander v. Texas Company, 149 F.Supp. 37 (D.C., La.).

Plaintiff cites and discusses Battle v. Liberty National Life Ins. Co., 493 F.2d 39. That was a class action and, having been dismissed on motion, the judgment was reversed. There, the complaint and exhibits consumed over 100 pages, and the appellate court held the complaint good as against a motion to dismiss. Here, the matter went to summary judgment based on supporting affidavits and an exhibit to a simple four-claim complaint.

Summary judgment was the proper method of disposing of this case and the entry of such judgment was not reversible error.

Affirmed.

BLOODWORTH, MADDOX, JONES and ALMON, JJ., concur.