H.M. SCOTT, Jr., as Trustee for Evins and Associates, Inc., and Affiliates Employee Stock Ownership Plan and Trust; Walter L. Barnett, as Trustee for Evins and Associates, Inc., and Affiliates Employee Stock Ownership Plan and Trust, Plaintiffs,

v.

John C. EVINS, an individual; Elizabeth H. Evins, an individual; Porter White and Yardley, Inc., a corporation, Defendants.

Civ. A. No. 91–G–1929–S.

United States District Court, N.D. Alabama, S.D.

Aug. 14, 1992.

Lee R. Benton, Paul A. Liles, Richard F. Ogle, Schoel, Ogle, Benton, Gentle & Centeno, Birmingham, Ala., for plaintiffs.

Lewis W. Page, Jr., Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for defendants John C. Evins and Elizabeth H. Evins.

Curtis O. Liles III, Tony G. Miller, and Michael D. Mulvaney, Maynard, Cooper, Frierson & Gale, P.A., Birmingham, Ala., for defendants Porter, White & Yardley.

## MEMORANDUM OPINION

GUIN, Senior District Judge.

In 1985 John C. Evins decided to retire from participation in Evins & Associates, Inc. [hereinafter Evins] and to sell his stock in Evins to a proposed employee stock ownership plan. At that time, he and his wife Elizabeth owned 275,900 shares out of the 581,300 outstanding shares. Their combined shares represented 47.5 percent of the outstanding stock. His son, who was over the age of 21, owned an additional 50,000 shares of Evins' stock.[1]

Porter, White & Yardley, Inc. [hereinafter PWY] was hired to perform an independent appraisal of the stock for the purpose of establishing the Affiliates Employee Stock Ownership Plan and Trust [hereinafter the ESOP].[2] A letter agreement [hereinafter the Agreement] from PWY dated September 18, 1985, was executed on behalf of Evins by Jack Scott,[3] the president of Evins.[4] PWY was to determine the fair market value of the stock of Evins immediately prior to the proposed stock sale to the ESOP. While PWY was under a duty to perform its appraisal in a workmanlike manner, the express terms of the Agreement did not require it to exercise any specific standard of care in performing the stock valuation, nor did it obligate PWY to provide any specific knowledge or skill in the performance of its services to Evins.

The December 1985 appraisal of Evins' stock by PWY at $9.32 per share[5] was based on financial information supplied by Evins' management. It did not reflect the proposed ESOP transaction or the ESOP debt. While plaintiffs contend omission of the contemplated leverage transaction was error,[6] the court notes that PWY was never informed by Evins of the amount of the debt, the terms of the financing, the nature of the guarantees, if any, on the part of the company, or any other details of the financing. Significant, however, is the fact that the figures reflecting the ESOP debt and the contributions required to service that debt were considered by plaintiff Barnett in preparing financial projections submitted to Central Bank of the South [hereinafter Central] in connection with the attempt to get financing.[7]

The plaintiffs acknowledge that the appraisal was based on the valuation guidelines of Revenue Ruling 59–60, 1959–1, C.B. 237, of the Internal Revenue Service.[8]

1. Mr. Evins' son is not a defendant in this suit.

2. The appraisal was conducted prior to the formation of the ESOP. The Trust Agreement was executed by H.M. Scott, Jr. and attested by Walter Barnett for the employees on October 1, 1985, effective January 1, 1985. Mr. Scott and Mr. Barnett signed the Agreement as trustees.

3. The letter agreement set forth fee arrangements for stock valuation, consultation in corporate strategy, and subsequent valuations.

4. The Agreement was solely between PWY and Evins. The proposed ESOP was not a party. PWY was hired by and paid by Evins, the client. The court has not accepted plaintiffs' argument that the Agreement was for the benefit of ESOP, a third-party beneficiary.

5. The shareholders and stockholders authorized a 100 to 1 stock split at a joint meeting on September 4, 1985. The book value (net asset value), not necessarily the market value of the stock, of Evins was $905.09 per share (5,831 shares outstanding) on July 30, 1985. Significantly, an offer of $853.00 per share of Evins stock in November 1984 did not materialize because Zenith refused to allow the sale of its franchise. The offer was the equivalent of 1.15 times the book value of Evins at year-end 1984. Were this multiple applied to year-end 1985, the stock price would be $1,037.33 per share.

6. The court does not agree with this contention. The appraisal was conducted according to the parameters of the industry, as evidenced by the valuation guidelines of Revenue Ruling 59–60, 1959–1, C.B. 237, of the Internal Revenue Service and other evidence set forth later.

7. The figures and projections provided to the bank were not provided to PWY.

8. The eight factors set out in Revenue Ruling 59–60, considered by PWY in making the stock valuation, are as follow: (1) the nature of the

They direct the court's attention to *Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir.1983), *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984). Rather than being applicable to the defendants, however, *Cunningham* is directed to the duties of the ESOP fiduciaries[9] and whether the fiduciary trustees were correct in relying upon the appraisal[10] almost two years after the appraisal when the company's financial condition had changed dramatically. The decision in *Cunningham* directly contradicts the plaintiffs' assertion that PWY should have considered the effect of the ESOP debt in determining the fair market value of the stock.[11]

The testimony of two plaintiffs' experts who placed a different valuation on the stock offered does not state that PWY failed to conduct the appraisal according to the appropriate standards, or failed to use the required levels of knowledge and skill. Nor does their testimony state that the value reached by PWY was not in the range of appropriate values. According to Phillip Moore of Seligman Valuations the

$9.32 per share value was within the range of correct or reasonable values.

The deposition testimony of plaintiffs' expert, Christopher Mercer[12] of Mercer Capital, was to the effect that an appraiser in the position of PWY should not consider the debt that would be incurred by an ESOP in purchasing the stock.[13] Mercer further testified that the value of the stock would be significantly less the day after the ESOP transaction than it was the day before because the ESOP debt caused a reduction in the balance sheet of the company. Mercer testified that the reduced value is no indication the appraisal was incorrect.

PWY submitted a detailed, written appraisal report in early December 1985. On December 31, 1985, the ESOP purchased the stock of John C. and Elizabeth H. Evins for $9.32 a share,[14] the same price at which plaintiff Scott had sold some of his personally owned shares in Evins to John Evins, his own son, David Scott, William Stancil,

---

business and the history of the enterprise from its inception; (2) the economic outlook in general and the condition and outlook of the specific industry in particular; (3) the book value of the stock and the financial condition of the business; (4) the earning capacity of the company; (5) the company's dividend-paying history and its capacity to pay dividends in the future; (6) whether or not the enterprise has goodwill or other intangible value; (7) sales of the stock and the size of the block of stock to be valued; and (8) the market price of stocks of corporations engaged in the same or a similar line of business whose stocks actively trade in a free and open market, either on an exchange or over-the-counter.

9. Duties of ESOP fiduciaries are set forth by statute. Pertinent language follows:

It is hereby declared to be the policy of this Act to protect interstate commerce and the interest of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b) (1976) (emphasis added).

10. All parties, including the government and its experts, agreed that the appraisal was performed correctly.

11. The defendants are not now and never have been fiduciaries of the ESOP. Plaintiffs are fiduciaries of the plan.

12. In 1991 Evins replaced PWY with Mercer as the entity responsible for the annual appraisals to establish the value of the stock for ESOP purposes. He was retained by the plaintiffs to testify as an expert on the 1985 stock appraisal. The plaintiffs did not, however, identify Mercer as an expert on the issue of whether or not PWY should have considered the effect of the ESOP leverage in its appraisal.

13. After suit was filed Mr. Ken Patton, vice-president of Mercer Capital, informed plaintiff Barnett that it was not the industry practice to consider the leverage.

14. The ESOP purchased 155,900 shares from John C. Evins for $1,452,988 and 120,000 shares from Elizabeth H. Evins for $1,118,400. Funds for the acquisition were borrowed by the ESOP from Central. The loan was guaranteed by Evins, its subsidiaries and affiliates, a pledge of the shares of stock purchased, a repurchase agreement by Evins, mortgages on certain leasehold interests of subsidiaries of Evins and assignments of rents and leases relating to property owned by subsidiaries of Evins.

and Lavelle Cost prior to the ESOP transaction.

PWY continued to perform and submit to Evins an annual appraisal required by ERISA in 1986, 1987, 1988, and 1989. Each of these appraisals indicated that the value of the stock had changed and that the leveraged transaction had not been considered in the 1985 appraisal. Plaintiff Barnett testified by deposition that he had been aware that PWY did not consider the ESOP debt since 1986. Having noticed a substantial drop in stock value when the 1986 appraisal was performed, he was told that it was standard in the appraisal industry not to consider the effect of the leverage. He confirmed the industry practice in a telephone conversation with a national ESOP organization. Thereafter, Barnett explained the post-transaction decrease in stock valuation to other Evins' employees in a 1987 meeting.

Plaintiffs never complained or criticized PWY's work prior to filing suit. Furthermore, they have testified that they know of nothing John Evins did wrong in the transaction and they do not believe the $9.32 a share price was too high.

On August 15, 1991, plaintiffs H.M. Scott, Jr. and Walter L. Barnett, as trustees of the ESOP, instituted suit against John C. Evins, Elizabeth H. Evins, and PWY, contending that $9.32 per share exceeded the fair market value, thereby causing the ESOP to pay more than "adequate consideration" for the stock as that term is defined in 29 U.S.C. § 1002(18).[15] They contend that John C. Evins was a fiduciary with respect to the ESOP[16] within the meaning of 29 U.S.C. § 1002(21)(A),[17] and that he and his wife were parties-in-interest within the meaning of 29 U.S.C. § 1002(14).[18]

Plaintiffs further contend that Elizabeth Evins and PWY participated in John Evins' breaches of fiduciary duty and are liable for the losses sustained by the ESOP as a result of those breaches. They contend that PWY breached its contract with the ESOP to determine the fair market value of the stock by failing to provide the knowledge and skill necessary to render that determination.

On May 14, 1992, the court granted the motion of PWY to dismiss plaintiffs' ERISA claims against it. On June 10, 1992, the court denied plaintiffs' May 11, 1992, motion to amend its complaint to assert that the ESOP was a third-party beneficiary of the contract between Evins and PWY.[19] Discovery was completed, the

---

**15.** "The term 'adequate consideration' ... means.... (B) in the case of an asset other than a security for which there is a generally recognized market, the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary."

**16.** There is no claim that PWY is a fiduciary.

**17.** "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."
The term "named fiduciary" is collaterally defined in ERISA Section 402(a)(2), 29 U.S.C. § 1102(a)(2) (1988).

**18.** "The term 'party in interest, means, as to an employee benefit plan—
  (A) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;
  (B) a person providing services to such plan;
  (C) an employer any of whose employees are covered by such plan;
  (D) an employee organization any of whose members are covered by such plan;
  (E) an owner, direct or indirect, of 50 percent or more of—
  (i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation.
  (ii) the capital interest or the profits of a partnership, or
  (iii) the beneficial interest of a trust or unincorporated enterprise,
which is an employer or an employee organization described in subparagraph (C) or (D);
  ..."

**19.** In their motion to amend plaintiffs concede that through discovery they had found that the Agreement was between Evins and PWY. This concession disposes of count two of the complaint by which plaintiffs allege that PWY breached a contract with ESOP by failing to

case had been pretried, and the motion was filed two months after the deadline for filing motions to amend.

■ At issue is whether John C. Evins was a fiduciary to the ESOP pursuant to 29 U.S.C. § 1002(21)(A), set forth in footnote 14.

While plaintiffs argue that John Evins breached his fiduciary duties to the ESOP there is nothing in the record to substantiate the claim that he was a fiduciary. Mr. Evins' decision to sponsor the establishment of an employee stock ownership plan was not a fiduciary decision, but a business one made as Chairman of the Board of Evins.[20] The decision had no relation to the plan management or the disposition of the plan assets. The trustees have testified they acted of their own free will, independently, and in accordance with what they believed to be their fiduciary obligations in establishing the ESOP and in purchasing the stock of Mr. and Mrs. Evins. Furthermore, there is no evidence in the record that Mr. Evins exerted any control or authority over the plaintiffs with respect to the transaction at issue.

■ There is no evidence that Elizabeth Evins, wife of John Evins and the seller of stock, was a fiduciary. It is established in this circuit that ERISA does not provide for claims against nonfiduciaries alleged to have participated in a breach of fiduciary duties. *Useden v. Acker,* 947 F.2d 1563 (11th Cir.1991).

Neither John nor Elizabeth [21] can be considered a party-in-interest as defined in 29 U.S.C. § 1002(14). Neither owned 50 percent or more of the stock of Evins. 29 U.S.C. § 1002(14)(E). John Evins could only be considered a party-in-interest as a "direct or indirect" owner of 50 percent or more of the stock if the stock of his wife

and son were attributed to him. Elizabeth Evins could only be considered a party-in-interest as a "direct or indirect" owner of 50 percent or more of the stock if the stock of her husband and son were attributed to her.

The Department of Labor has not issued regulations defining the circumstances under which a person will be considered the "direct or indirect" owner of stock for purposes of 29 U.S.C. § 1002(14)(E). Regulations under a comparable provision of the tax code state that stock ownership will be attributed from an adult child to the child's parent only if the parent and spouse, when considered as a unit, own more than 50 percent of the stock. See Treas.Reg. § 1.414(c)–4(b)(6)(ii), 26 C.F.R. § 1.414(c)–4(b)(6)(ii). A comparable reading of ERISA would indicate that neither John Evins nor Elizabeth Evins is a party-in-interest.

ERISA § 3(18), 29 U.S.C. § 1002(18), states that "adequate consideration" means the "fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary," thus placing the pricing responsibility on the trustees and named fiduciaries only. Proposed regulations define the term "fair market value" as the

> price at which an asset would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, and both parties are able, as well as willing, to trade and are well informed about the asset and the market for that asset.

Prop. Labor Reg. § 1 2510.3–18(b)(2).

■ The proposed regulations do not state that the valuation must take into

---

accurately determine the value of the stock to be purchased by the ESOP and by "failing to provide the knowledge and skill necessary to render that determination."

**20.** Plaintiffs contend that the ESOP transaction was not a business decision for the benefit of the corporation. They contend Mr. Evins was able to defer the capital gain on the sale of the stock to the ESOP through the use of a special provision in the Internal Revenue Code pertain-

ing to ESOP transactions. Regardless of that provision, Mr. Evins had made the decision to retire from the business and to sell his stock. In the event the sale of stock to the ESOP did not materialize the contract stated that Evins would purchase the outstanding shares.

**21.** While the plaintiffs argue that Mrs. Evins should return the amount in excess of the fair market value to the ESOP under the "unjust enrichment" theory they make no analysis.

account any additional debt placed on the issuer as a result of the transaction. The common stock of Evins exists independently of the debt used to leverage the purchase, whether or not guaranteed by the corporation (as was done here). When the stock was appraised, no such debt existed and was therefore properly not taken into account.

■ Christopher Mercer testified that the debt to be assumed by the employer in the formation of an ESOP should not be considered because it removes both the "hypothetical buyer" and the "able buyer" elements from the "fair market value" determination process.

The standard of fair market value for an independent appraisal report is the hypothetical price between a willing buying [sic] and a willing seller, both of whom are knowledgeable, neither of whom are under compulsion, and both of whom have capacity to engage in a transaction.

If the trustees made the "adequate consideration" decision, the transaction was one between a willing seller and buyer at "fair market value." If the trustees failed to determine "adequate consideration" they have known these facts since 1985, thus barring the action by the three year statute of limitations. The same bar applies to the 1986 date when Barnett was apprised of the industry standard of not including a leveraged transaction in stock appraisal and the 1987 date when the post-transaction decrease in stock valuation was explained to the Evins employees.

The applicable ERISA statute of limitations is set forth in part below:

(a) No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation....

29 U.S.C. § 1113(a) (Emphasis added).

Plaintiffs argue that the three year statute of limitations applies only when a plaintiff has specific knowledge that an ERISA requirement has been violated. As authority they erroneously cite *Brock v. Nellis*, 809 F.2d 753 (11th Cir.1987), a holding applicable to an action brought by the Secretary. Here we have the trustees themselves suing nonfiduciaries for the purpose of protecting themselves from the consequences of their own breaches of fiduciary duty. In *Blanton v. Anzalone*, 760 F.2d 989, 991–92 (9th Cir.1985), the court held that the ERISA statute of limitations, Section 413(a)(2)(A) (1982), 29 U.S.C. § 1113(a)(2)(A), bars an action for violation of Section 406 three years after the plaintiff has actual knowledge of the facts, not knowledge of the violation of the law.

Plaintiffs claim that PWY failed to consider the leverage in the transaction, but they admit knowing that fact since 1986. They failed to act on it. In the interim between 1986 and the filing of the suit in 1991 the evidence has become stale. Recollection of the timing of events or circumstances leading to the signing of the Agreement has dimmed.

Based on the above facts the court holds that the defendants' motions for summary judgment are due to be granted. The action is barred by the ERISA statute of limitations.

■ Not only is the action barred by the ERISA statute of limitations, the court also holds that summary judgment should be granted PWY on count two of the complaint by which the plaintiffs allege that PWY breached a contract with the ESOP by failing to accurately determine the value of the stock to be purchased by the ESOP and "by failing to provide the knowledge and skill necessary to render that determination." Plaintiffs have admitted in their motion to amend the complaint that the ESOP was not a party to the Agreement

between PWY and Evins. One not a party to a contract cannot take advantage of any breach. *Rush v. Thomas Duckett Construction Co., Inc.,* 380 So.2d 762 (Ala. 1979); *Twine v. Liberty National Life Insurance Co.,* 294 Ala. 43, 311 So.2d 299 (1975).

By alleging that PWY failed to "provide the knowledge and skill necessary" to accurately perform under the Agreement plaintiffs assert PWY was negligent in its performance of the appraisal. The Alabama Supreme Court has held repeatedly that claims implicitly arising out of a contract that are not based on any express provision of the contract lie in tort, not contract.

> "When the contract *does not in terms require reasonable care in doing the act stipulated to be done,* the law imposes a duty—*but does not imply a contract*—to exercise due care in doing the act; and, *therefore when negligence exists in doing that act an action in tort only is available* because there is no express or implied contract which is breached."

*Bailey v. Liberty Mutual Insurance Company,* 451 So.2d 279, 281 (Ala.1984) (quoting *Garig v. East End Memorial Hospital,* 279 Ala. 118, 182 So.2d 852, 854 (1966) (the quotation in *Garig* originally appeared in *Waters v. American Cas. Co.,* 261 Ala. 252, 73 So.2d 524, 529 (1953) without the emphasis). *See also Reed v. Stempien,* 475 So.2d 841 (Ala.1985) (quoting *Waters* ); *Marsh v. Southern Airways, Inc.,* 316 F.2d 91, 93 (5th Cir.1963) [22] (quoting *Waters* and *Wilkinson v. Mosley,* 18 Ala. 288 (1850), for the same principle).

Any tort claims asserted against PWY would have a two year statute of limitations. Ala.Code § 6–2–38 (1991 Supp.). This would bar the instant suit against PWY. The stock valuation was completed in 1985. The sale of the stock to the ESOP was in December 1985. The applicable two year statute of limitations on the 1985

Agreement expired in December 1987. The statute of limitations pertaining to the 1986 valuation expired in 1988. The statute of limitations pertaining to the 1987 valuation expired in 1989. The statute of limitations pertaining to the 1988 valuation expired in 1990.[23] Suit was not filed until August 15, 1991.

For the reasons set forth above the court holds that the motions for summary judgment filed by defendants John C. Evins, Elizabeth H. Evins and PWY be granted. The defendants were not fiduciaries or parties-in-interest. Consequently, they owed no duty to the ESOP. Even had they been fiduciaries and violated fiduciary duties any alleged claims against them are barred by the ERISA statute of limitations and the Alabama statute of limitations.

For the reasons set forth in this opinion the motion of plaintiffs for summary judgment is denied.

An order consistent with this opinion is being entered contemporaneously herewith.

DONE and ORDERED.

### FINAL ORDER GRANTING SUMMARY JUDGMENT

This cause comes before the court on the following motions:

1) Motion of the plaintiff for partial summary judgment on its claims against John C. Evins and Elizabeth H. Evins;

2) Motion of defendant Porter, White & Yardley, Inc. for summary judgment in its favor as to all claims against Porter White & Yardley, Inc. contained in count two of plaintiff's complaint; and,

3) Motion of defendants John C. Evins and Elizabeth H. Evins for summary judgment.

Having considered the motions, the pleadings, the submissions of counsel, and the applicable law the court is of the opinion that judgment is due all defendants as a matter of law, there being no genuine

---

**22.** The decisions of the Fifth Circuit Court of Appeals were adopted by the Eleventh Circuit Court of Appeals in *Bonner v. Prichard,* 661 F.2d 1206 (11th Cir.1981).

**23.** Plaintiff Scott, President of Evins and Associates, accepted the terms of the September 18, 1985, letter from PWY for subsequent stock valuations by attaching his signature to the letter.

**418**

issue of material fact, and there being no just reason for delay in entering a final judgment. Accordingly, in conformity with the memorandum opinion being entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DE-CREED that the motion of the plaintiff for partial summary judgment on its claims against John C. Evins and Elizabeth H. Evins be and it hereby is DENIED. It is

FURTHER ORDERED, ADJUDGED and DECREED that the motion of defendant Porter, White & Yardley, Inc. for summary judgment in its favor as to all claims against Porter White & Yardley, Inc. contained in count two of plaintiff's complaint be and it hereby is GRANTED. It is

FURTHER ORDERED, ADJUDGED and DECREED that the motion of defendants John C. Evins and Elizabeth H. Evins for summary judgment be and it hereby is GRANTED, and it is

FURTHER ORDERED, ADJUDGED and DECREED that FINAL JUDGMENT be and it hereby is ENTERED in favor of the defendants, and the plaintiffs shall have and recover nothing of the defendants in this action.

DONE and ORDERED.