The plaintiffs, Tim L. Swann and Tina J. Swann, appeal from a summary judgment entered in favor of the defendants, William P. Hunter, Jr., H.C. Mabry, and Limestone County.
This action arose from the Swanns' purchase of a residential house and lot, whose sewage disposal system failed. About a month after the Swanns bought their house in Chriswood subdivision, located in Limestone County, sewage began oozing to the surface of their property. After conducting soil and percolation tests and learning that their land was not suitable for an individual sewage disposal system, i.e., a septic tank and field lines, the Swanns brought this action. In their amended complaint, they named as defendants, Limestone County; Bobby Wood, the developer of the Chriswood subdivision;[1] and Hunter and Mabry, a surveyor and an engineer respectively, who were contracted by Wood to perform surveying and engineering services. The Swanns alleged, under a third-party beneficiary theory, breach of contract claims against Hunter, Mabry, and Limestone County, in connection with surveying and engineering services performed by Hunter and Mabry, and a claim of fraud against Limestone County.
The issues are (1) whether the Swanns, purchasers of a lot in a subdivision, presented substantial evidence that they were intended third-party beneficiaries of a contract between developer Wood and Hunter and Mabry, who contracted with Wood to perform the percolation and soil boring tests on each of the lots in the subdivision,[2] and (2) whether the Swanns presented substantial evidence that Limestone County participated in a fraudulent scheme when it approved the final plat for the Chriswood subdivision.
In March or April 1985, Wood orally contracted with Hunter, a licensed land surveyor, for Hunter to survey and draw a plat for the Chriswood subdivision and to perform percolation tests on each of the 18 lots in the nascent subdivision. Required by regulations of the Alabama Department of Health, percolation tests determine whether a lot is suitable for an individual ground absorption sewage disposal system. In May and June 1985 Hunter surveyed the tract of land, drew the plat, and performed the percolation tests. Hunter then completed a "Preliminary Subdivision Water Supply and Sewage Disposal Report of the Alabama Department of Public *Page 376 
Health" and delivered it to Wood, for it to be filed with the Alabama Health Department.
Because Hunter was not a licensed engineer and because the signature of a licensed engineer was required on the water supply and sewage disposal report, Hunter, and allegedly Wood, hired Mabry, a retired civil engineer, to prepare and sign the report. After conducting an on-site examination of the percolation-test holes dug by Hunter and noting that they revealed no groundwater, Mabry signed the report.
Wood sold lot 11 of the Chriswood subdivision to Myron McGee, Tina Swann's brother. McGee engaged a contractor to build a house on the lot. Three months after buying the lot, McGee sold it to the Swanns.
Shortly after moving into the house, the Swanns began experiencing problems with their septic tank and field lines. After raw sewage began to seep to the surface of their property, the Swanns had new field lines dug in April 1987. The new field lines ameliorated the condition until January 1988, when sewage again began to ooze to the surface. This time, the Swanns contracted with Ronnie Coffman, a registered surveyor, to perform percolation tests on their property. On January 15, 1988, Coffman performed five percolation tests on lot 11. These tests revealed that the Swanns' property was not suitable for a septic tank and field lines.
The first issue is whether the Swanns presented substantial evidence that they were intended beneficiaries under the contract between Wood and Hunter and the contract between Wood and Mabry.
To recover in a breach of contract action, as a third-party beneficiary, the plaintiff must prove the following: (1) that the contracting parties intended, when they entered the contract, to bestow a direct, as opposed to an incidental, benefit upon a third party, (2) that the plaintiff was the intended third-party beneficiary of the contract, and (3) that the contract was breached. Pope v. McCrory, 575 So.2d 1097,1100 (Ala. 1991); Sheetz, Aiken Aiken v. Spann, Hall, Ritchie,Inc., 512 So.2d 99, 101-02 (Ala. 1987). The intention of the contracting parties, as disclosed by the writing, if any, and the surrounding circumstances known to the parties, determines the rights of the alleged third-party beneficiary. Weninegar v.S.S. Steele Co., 477 So.2d 949, 955 (Ala. 1985); MutualBenefit Health Accident Ass'n of Omaha v. Bullard, 270 Ala. 558,567, 120 So.2d 714, 723 (1960).
The Swanns argue that purchasers of the lots in the Chriswood subdivision, such as they, directly benefited from the contracts between Wood and Hunter and Wood and Mabry. They contend that there was no reason to perform the percolation tests, other than to directly benefit purchasers of these lots by determining whether the lots were suitable for individual sewage disposal systems.
In Pope v. McCrory, supra, the Court addressed the issue before us in a case involving similar circumstances. In Pope, Rogers offered a parcel of real estate for sale. Interested in purchasing it, Tisdale contracted with an engineering firm to survey the property and perform percolation tests. The engineering firm prepared an application for an individual water supply and prepared an on-site sewage disposal report, both of which were filed with, and subsequently approved by, a county health department. Tisdale, however, decided not to buy the property. Thereafter, the plaintiff Pope bought it. At the closing, Rogers gave Pope a copy of the engineering firm's report and survey, and Pope's name was substituted for Tisdale's on the application and report. While the septic tank was being installed, it was discovered that the water table was too high for an individual sewage disposal system, and approval of the septic system was withdrawn. Pope brought an action against the engineering firm, alleging, inter alia, a third-party beneficiary breach of contract claim, based on the contract between the engineering firm and Tisdale. This Court affirmed a summary judgment in favor of the firm, holding that the evidence showed that when the contract was entered into the firm did not envision that Pope would be a direct beneficiary of its contract with Tisdale.
The surrounding circumstances known to the parties to the contract in this case distinguish this from Pope. In Pope, the engineer *Page 377 
performed the percolation test for an individual negotiating the purchase of a tract of land. In this case, however, Hunter and Mabry contracted with the developer of a residential subdivision to perform percolation tests for the purpose of obtaining approval of the subdivision from state and local health agencies. In the circumstances of this case, it was obvious that Wood intended to sell the lots, on which the percolation tests were performed, to individuals for the construction of residential dwellings, which would require a properly functioning sewage disposal system. Unlike the engineer in Pope, Hunter and Mabry could clearly envision that purchasers of lots in the Chriswood subdivision would be direct beneficiaries of their performance under the contract with Wood.
Hunter and Mabry argue that they entered into the contract with Wood solely for the purpose of complying with state and local regulations and obtaining approval of the Chriswood subdivision, not, they say, for the purpose of benefiting future purchasers of lots in the Chriswood subdivision. However, the state and local regulations, in accordance with which Wood had to obtain approval of the subdivision, were promulgated for the protection and benefit of the public, especially those members of the public purchasing real property for residential purposes. The most direct benefit of Hunter and Mabry's performance of the percolation tests under the contract to obtain approval of the Chriswood subdivision inured ultimately to the benefit of the purchasers of lots in the subdivision, such as the Swanns. Therefore, we hold that Tim and Tina Swann presented substantial evidence that they were intended beneficiaries of the contracts, between Wood and Hunter and Wood and Mabry, to perform percolation tests on the lot purchased by the Swanns.
The second issue is whether there was evidence that Limestone County committed fraud or participated in a fraudulent scheme with Wood when it approved the final plat for Chriswood subdivision.
The Swanns argue that the Limestone County participated in a fraudulent scheme because, they say, the Limestone County Commission, in approving the plat, impliedly represented that the commission had complied with all of the county's subdivision regulations, when, in fact, it had not. To prove that Limestone County did not comply with its own subdivision regulations, the Swanns introduced evidence that, in derogation of the regulations in effect when the Chriswood subdivision was built, the Limestone County Commission and Wood agreed to split the cost of constructing the roads through the subdivision. Deposition testimony in the record indicates that at that time Limestone County subdivision regulations required the developer to bear all the costs of constructing roads through a subdivision.
In its summary judgment, the circuit court held that in approving the subdivision plat the Limestone County Commission made no material representations, express or implied, that the soil on lot 11, or the soil on any other lot, would pass a soil percolation test. We agree. The Swanns presented no evidence that, in approving the final plat for the Chriswood division, the Limestone County Commission made any implied representation as to the condition of the real estate.
Because the Swanns presented substantial evidence creating a factual issue of whether they were intended beneficiaries of a contract between Wood and Hunter and a contract between Wood and Mabry, we reverse the summary judgment entered on their breach of contract claim. Because the Swanns did not introduce substantial evidence creating a factual issue of whether Limestone County made an implied misrepresentation concerning the condition of the lot they later bought, we affirm the summary judgment entered in favor of Limestone County. Therefore, we affirm in part, reverse in part, and remand the cause.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, HOUSTON, KENNEDY and INGRAM, JJ., concur.
[1] Bobby Wood is not a party to this appeal.
[2] Although the Swanns alleged in their amended complaint that they were third-party beneficiaries of an alleged contract between Wood and Limestone County, on appeal they make no argument in support of this claim. Therefore, we consider any issue with regard to this breach-of-contract claim waived. *Page 378