WOODALL, Justice.
Maria E. Adan appeals from a default judgment for $84,271.24 in favor of Kes-sler-Greystone, LLC (“Kessler”), on Kes- *317 sler’s claim against Adan and Bernals, Inc. (“Bernals”), seeking accelerated rental payments and attorney fees. Bernals appeals from a summary judgment in favor of Kessler for $130,029.44 in attorney fees and the same accelerated rental payments on Kessler’s claim against Adan and Ber-nals and in favor of Kessler on counterclaims that Bernals asserted against Kes-sler. We vacate the judgments, dismiss the action, and dismiss the appeal.

I. Facts and Procedural History

This dispute arose out of a “Lease Agreement made and entered into on ... the 8th day of June, 2005, between Taylor Properties, LLC [ (‘Taylor’),] an Alabama limited liability company, or its successors and assigns (hereinafter called ‘Landlord’), and Bernals, Inc., [an] Alabama corporation (hereinafter called ‘Tenant’).” The leased premises consisted of suites 113 and 114 in a building in Shelby County known as Greystone Park. “The Leased Premises [were] to be used and occupied by Tenant” as a “Cuban Restaurant — Dine In & Take Out.” The lease was signed by Maria E. Adan, the sole owner of Bernals. Bernals subsequently used the leased space to operate a Cuban restaurant called Cuban Grill 280. Adan also executed a “guarantee of lease,” whereby she agreed to personally guarantee “full and prompt payment of rent.”
On September 1, 2005, Taylor entered into a contract with Brentwood Properties, Inc. (“Brentwood”), whereby Brentwood agreed to manage and operate the Grey-stone Park premises on behalf of Taylor (“the Brentwood-Taylor agreement”). As part of its responsibilities under the Brent-wood-Taylor agreement, Brentwood was to collect all rents due from the tenants of Greystone Park. In addition, the Brent-wood-Taylor agreement specified that Brentwood was to “take all reasonable necessary action to enforce tenant leases, in-eluding but not limited to serving tenants with notices to vacate the leased premises ... and undertaking collection and eviction procedures.” The Brentwood-Taylor agreement was to terminate on August 31, 2007, or upon the sale of Greystone Park. On February 1, 2007, Taylor sold Grey-stone Park to Kessler.
On February 7, 2008, Brentwood sued Bernals and Adan alleging breach of contract. Brentwood’s complaint stated:
“1. On or about the 8th day of June, 2005, the Plaintiff, Brentwood Properties, Inc., and the Defendant, Bernals, Inc., entered into a written lease agreement for certain premises in the building known as Greystone Park....
“2. On or about the 25th day of July, 2005, ... Adan ... executed a personal guaranty for the above stated written lease agreement.
“3. [Bernals and Adan] breached the said agreements by failing to pay the proper rental amounts, by failing to pay the proper late fees, and by failing to pay the proper utility fees.
“4. [Brentwood] claims a reasonable attorney’s fee ... pursuant to the said agreements.
“WHEREFORE, [Brentwood] demands judgment against the Defendants in the sum of [$75,000], plus a reasonable sum as attorney’s fees, plus interest and costs.”
Several months later, on July 1, 2008, Brentwood entered into a written property-management agreement with Kessler (“the Brentwood-Kessler agreement”), similar to the Brentwood-Taylor agreement.
On March 20, 2009, Brentwood filed a motion for a summary judgment. In their reply to that motion, Bernals and Adan argued that Brentwood had no standing to sue based on an alleged breach of the lease *318 agreement because Brentwood was not a party to the lease agreement. On April 13, 2009, the trial court denied Brent-wood’s summary-judgment motion.
On April 14, 2009, Brentwood filed a motion to substitute Kessler for itself in the action. The trial court granted that motion. On April 17, 2009, Bernals filed counterclaims against Kessler alleging breach of contract, fraud, breach of warranty of quiet enjoyment, trespass, and negligence.
A bench trial of the case was scheduled for April 28, 2009. A few days before that date, a dispute surfaced for the first time regarding the spelling of Adan’s name. Adan’s name had appeared in the style of the complaint and on subsequent pleadings and motions as “Marca E. Adan,” and the action had been so styled.
On the day set for trial, the parties— including Adan — appeared in court. The dispute over Adan’s name was again taken up at that time. It is undisputed that no such person as “Marca” E. Adan exists. It is likewise undisputed that “Maria” E. Adan had signed the lease and the guarantee and that she and her counsel were present in court on the day set for trial.
According to Adan’s affidavit, the proceedings ended after approximately an hour, and the trial was to be continued to a later date. Nevertheless, on May 1, 2009, the trial court entered, in pertinent part, the following order:
“Upon oral motion made by the plaintiff, Kessler-Greystone, LLC, the name of the defendant, Marca E. Adan, is hereby changed to reflect the Defendant’s correct and proper name, Maria E. Adan.
“Further, the Court finds that service of the Summons and Complaint was properly made upon said defendant, Maria E. Adan, at her personal residence address, and that said defendant, Maria E. Adan, is the signatory to the said lease agreement and personal guaranty forming the basis to the plaintiffs, Kes-sler-Greystone, LLC’s, Complaint.
“Further, the Court finds that the defendant, Maria E. Adan, failed to appear for trial in the above-referenced matter.
“Therefore, judgment by default is hereby entered in favor of plaintiff, Kes-sler-Greystone, LLC, and against defendant, Maria E. Adan, in the amount of Eighty-Four Thousand Two Hundred Seventy-One and 24/100 Dollars ($84,-271.24), plus costs of court.”
(Emphasis added.)
Adan moved to set aside the default judgment. That motion was denied. On December 11, 2009, Kessler filed a motion for a summary judgment ■ on Bernals’s counterclaims against it and a renewed motion for a summary judgment on its claims against Bernals. On February 2, 2010, the trial court granted Kessler’s motion for a summary judgment as to Ber-nals’s counterclaims and entered a judgment against Bernals in the sum of $130,029.44.
On February 16, 2010, Kessler filed a motion to revise the judgment against Adan to coincide with the amount of the judgment entered against Bernals. On February 26, 2010, Bernals filed a motion to alter, amend, or vacate the judgment against it. On March 29, 2010, the trial court denied Kessler’s motion to revise the judgment against Adan. On April 2, 2010, the trial court denied Bernals’s motion to alter, amend, or vacate the judgment.
On May 13, 2010, Bernals and Adan filed a notice of appeal to this Court from those judgments. On appeal, they renew their challenge to Brentwood’s standing to commence this action, that is, to invoke the subject-matter jurisdiction of the trial *319 court. That challenge is dispositive of this case.

II. Discussion

The question of standing implicates the subject-matter jurisdiction of the court. Ex parte Howell Eng’g & Surveying, Inc., 981 So.2d 413, 419 (Ala.2006). “When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.” State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999). Moreover, “[t]he jurisdictional defect resulting from the plaintiffs lack of standing cannot be cured by amending the complaint to add a party having standing.” Cadle Co. v. Shabani, 4 So.3d 460, 463 (Ala.2008). “When the absence of subject-matter jurisdiction is noticed by, or pointed out to, the trial court, that court has no jurisdiction to entertain further motions or pleadings in the case. It can do nothing but dismiss the action forthwith.” Id. When a circuit court lacks subject-matter jurisdiction, all orders and judgments entered in the case, except an order of dismissal, are void ab initio. Redtop Market, Inc. v. State, 66 So.3d 204 (Ala.2010). Thus, if Brentwood lacked standing to commence this action, then the absence of subject-matter jurisdiction was not cured by the substitution of Kessler, and every order and judgment entered by the trial court is void.
“Standing ... turns on ‘whether the party has been injured in fact and whether the injury is to a legally protected right.’” 2018 Rainbow Drive, 740 So.2d at 1027 (quoting Romer v. Board of County Comm’rs of the County of Pueblo, 956 P.2d 566, 581 (Colo.1998) (Kourlis, J., dissenting)). Brentwood’s initial complaint sought damages and attorney fees from Bernals and Adan for an alleged breach of the lease agreement, alleging therein that Brentivood leased the premises to Bernals. However, it is undisputed that Brentwood was not a party to the lease agreement. “It is well-settled law that ‘one not a party to, or in privity with a contract, cannot sue for its breach.’ ” Dunning v. New England Life Ins. Co., 890 So.2d 92, 97 (Ala. 2003) (quoting Twine v. Liberty Nat’l Life Ins. Co., 294 Ala. 43, 50, 311 So.2d 299, 305 (1975)).
Kessler’s sole response to the jurisdictional challenge is an assertion that Brentwood had standing to sue based on a breach of the lease agreement as a third-party beneficiary of that agreement. See Russell v. Birmingham Oxygen Serv., Inc., 408 So.2d 90 (Ala.1981) (noting that “a third person has no rights under a contract between others,” and no standing to sue based on a breach of that contract, “unless the contracting parties intend that the third person receive a direct benefit enforceable in court”). According to Kes-sler, “the lease agreement entered into between Taylor ... and Bernals on June 8, 2005, was for the benefit of the property manager, Brentwood,.... because on September 1, 2005, Taylor and Brentwood entered into [a] written agreement whereby Brentwood agreed to manage and operate the property on behalf of Taylor.” Kes-sler’s brief, at 15 (emphasis added).
This argument is without merit. It proposes that the purpose of the lease agreement was to benefit Brentwood by providing Brentwood some property to manage. This argument confuses cause and effect and has the proverbial “tail wagging the dog.” As a matter of common experience, leases are made for the intended benefit of the lessor and lessee. In other words, managers of rental property under separate agreements benefit only incidentally from the lessor-lessee relationship. See generally John D. Calamari & Joseph M. Perillo, The Law of Contracts § 17.3 (4th ed. 1998) (“The presumption is that the *320 parties contract for their own benefit and not for the benefit of a third person.”).
In that connection, it is well established that “[t]o recover [as a] third-party-beneficiary ..., the claimant must show: (1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; (2) that the claimant was the intended beneficiary of the contract; and (3) that the contract was breached.” Ex parte Steadman, 812 So.2d 290, 295 n. 3 (Ala. 2001) (emphasis added); see also Swann v. Hunter, 630 So.2d 374, 376 (Ala.1993). The record contains no evidence indicating that, at the time they executed the lease agreement, Bernals and Taylor had in view, or intended to benefit, Brentwood. Brentwood is not mentioned in the lease agreement. Indeed, ¶ 36.11 of the lease agreement directs all payments under the lease to be made directly to Taylor at Taylor’s address. In short, Brentwood is not a third-party beneficiary of the lease agreement.
In any event, assuming — without deciding — that an agreement giving Brentwood authority to “take all reasonable necessary action to enforce tenant leases, including ... undertaking collection and eviction procedures,” would give Brentwood standing to commence this action, Bernals has raised serious “questions [regarding] the very existence of [such an agreement] being in place” when the complaint was filed. Reply brief, at 11 (emphasis added). The record suggests that there was no management agreement in force on February 7, 2008, when Brentwood filed its complaint, the Brentwood-Taylor agreement having terminated, either upon the sale of Greystone Park on February 1, 2007, or upon the expiration of the agreement on August 31, 2007. The Brentwood-Kessler agreement was not executed until July 1, 2008, five months after this action was filed. Thus, Brentwood purported to commence this action during a hiatus in the management agreement of, at the very least, five months.
Although Kessler asserts that “at Kes-sler’s request, Brentwood continued its management ... of the premises” after the purchase of Greystone Park from Taylor, Kessler’s brief, at 5, the only evidence provided for that assertion is a letter from Kessler to Avery A. Clenney, president of Brentwood (“the Greystone Park letter”). The Greystone Park letter stated, in pertinent part: “[Kessler] purchased Greystone Park on February 1, 2007, and was assigned the management agreement between [Taylor] and [Brentwood]. [Kes-sler] hereby agrees to extend the existing management agreement for two years from the expiration date.”
The Greystone Park letter is dated February 3, 2007. However, the record indicates that the Greystone Park letter was created in August 2008 and was backdated to February 3, 2007, to create the appearance of an uninterrupted, written management authority. Specifically, on August 26, 2008, approximately seven months after the complaint was filed, Clenney sent two e-mails to a Kessler employee, Zack Hutto. On one e-mail, the subject line was “Greystone Park Letter.” The e-mail read:
“Zack,
“Here is my suggestion for the letter about Greystone Park’s management agreement. Please see attached.
“Avery”
Attached to the e-mail was the Greystone Park letter. On the second e-mail, the subject line was “Date of Letter.” That email read:
“Zack,

“Be sure to date the letter sometime in February of 2007.

*321 “Avery”
(Emphasis added.)
This evidence is unrebutted— Kessler does not mention the e-mails or address in any manner the evidence of backdating the Greystone Park letter.
“[W]hen the parties have not provided sufficient legal or factual justification for [the court’s subject-matter] jurisdiction, this Court is not obligated to embark on its own expedition beyond the parties’ arguments in pursuit of a reason to exercise jurisdiction. The burden of establishing the existence of subject-matter jurisdiction falls on the party invoking that jurisdiction.”
Crutcher v. Williams, 12 So.3d 631, 635 (Ala.2008). In other words, this Court is not duty-bound “to construct theories and search the record for facts to support the existence of jurisdiction for plaintiffs who choose to stand mute in the face of a serious jurisdictional challenge.” Blevins v. Hillwood Office Ctr. Owners’ Ass’n, 51 So.3d 317, 322 (Ala.2010) (some emphasis added)(appeal and case dismissed when the plaintiff/appellant “essentially” did not dispute a serious challenge to standing).

III. Conclusion

Given the cursory manner in which Kessler has confronted the substantial standing issue presented in this case, Kessler has not met its burden of demonstrating the existence of subject-matter jurisdiction. Thus, we hold that the complaint failed to invoke the subject-matter jurisdiction of the trial court. Therefore, every order and judgment entered in this case was void, including the judgments from which this appeal was taken. A void judgment will not support an appeal. Health Care Auth. for Baptist Health v. Davis, [Ms. 1090084, January 14, 2011] — So.3d-,-(Ala.2011). Consequently, the judgments are vacated, and the case and the appeal are dismissed.
JUDGMENTS VACATED; CASE DISMISSED; AND APPEAL DISMISSED.
STUART, BOLIN, PARKER, SHAW, MAIN, and WISE, JJ., concur.
COBB, C.J., concurs in the result in part and dissents in part.
MURDOCK, J., dissents.