Rel: August 29, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2025

_____

## CL-2024-0504, CL-2024-0505, and CL-2024-0506

_____

## C.R.B.

### v.

## Jackson County Department of Human Resources

**Appeals from Jackson Juvenile Court**
**(JU-22-281.02, JU-22-282.02, and JU-22-283.02)**

On Return from Remand

PER CURIAM.

C.R.B. ("the mother") appealed from three essentially identical judgments of the Jackson Juvenile Court ("the juvenile court") terminating her parental rights to three of her children, L.L.B., J.L.B.,

and C.J.B. ("the children"). On February 28, 2025, this court issued an opinion explaining that, although the mother was not an Alabama resident at the time the termination-of-parental-rights actions were commenced, the juvenile court's subject-matter jurisdiction was not challenged and the record did not contain sufficient evidence for us to determine whether the juvenile court had subject-matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), § 30-3B-101 et seq., Ala. Code 1975. C.R.B. v. Jackson Cnty. Dep't of Hum. Res., [Ms. CL-2024-0504, Feb. 28, 2025] ___ So. 3d ___ (Ala. Civ. App. 2025). Therefore, we remanded the actions to the juvenile court and directed it to hold an evidentiary hearing at which the parties could develop a record from which such a determination could be made and to supplement the record with a transcript of that hearing or with any evidence that the juvenile court had relied on in earlier dependency actions involving the mother pertaining to subject-matter jurisdiction.

The juvenile court has made a return from remand and has supplemented the record with a transcript of the evidentiary hearing it held on remand and the separate judgments it entered addressing jurisdiction. Having reviewed the supplemental record, we conclude that

the juvenile court did not have subject-matter jurisdiction to consider the petitions to terminate the mother's parental rights, and we dismiss these appeals.

Subject-Matter Jurisdiction Under the UCCJEA

Evidence presented at the original trial on the termination of the mother's parental rights indicated that the Jackson County Department of Human Resources ("DHR") became involved with the family in November 2022, when the mother and the children, who were then four years old, three years old, and four months old, were staying in a motel room in Bridgeport.  C.R.B., ___ So. 3d at ___.  The mother allowed a friend to stay in their motel room overnight, and the friend overdosed on fentanyl while the children were in the room.  Law-enforcement officials were notified, and the mother was arrested and charged with various drug offenses. Id. at ___. Alyssa Newsom, who worked for DHR, testified during the original trial that DHR had received a report about the mother's arrest and that, after an investigation, the children were picked up.  After a shelter-care hearing, the children were placed in foster care in Alabama.  Id. at ___.  Upon her release from the Jackson County jail four days after her arrest, the mother left Alabama.  Id. at ___.

During the evidentiary hearing that the juvenile court held on remand, the mother testified that she lived in Lebanon, Tennessee.[1] She said that in the 10 months preceding the children's removal from her custody -- February 2022 through November 2022 -- she and the children had lived in Tennessee continuously. We note that the youngest child was born in July 2022; therefore, according to the mother's timeline, that child would have lived in Tennessee from birth. Newsom testified during the hearing on remand that DHR's records indicated that the mother had told DHR that "she had moved from her mother's house in Georgia to the motel in Bridgeport." The mother told Newsom that she had rented a motel room in Bridgeport for a week. At the hearing on remand, the mother denied moving from her mother's house in Georgia directly to the motel, saying that she had moved from her mother's "back to Tennessee" in February 2022. However, her testimony in this regard contradicted her testimony at the original termination trial that she had been "living at" her mother's house in Georgia when she came to Alabama. She did not say at the original trial how long she had been living with her mother

_____

[1]Z.S.B., the children's father, also lived in Tennessee. C.R.B., ___ So. 3d at ___. He consented to the termination of his parental rights to the children, and he is not involved in this appeal. Id. at ___.

at that point. The mother testified that the reason she was in Alabama was to "get the children out from where my brother was killed" and that her sister-in-law lived in South Pittsburg, Tennessee, near the Alabama state line. The mother said that her four oldest children lived with relatives in Tennessee. There was no evidence indicating that the mother had lived in Alabama either before or after the children were removed from her custody.

At the hearing on remand, the mother agreed that the juvenile court had had emergency jurisdiction to hold a shelter-care hearing after her arrest in November 2022. The record reflects that, on December 2, 2022, the juvenile court entered shelter-care orders, one for each child, removing the children from the mother's custody and placing them temporarily in the custody of DHR. Less than two months later, on January 26, 2023, the juvenile court entered three judgments, one for each child, finding that the mother had admitted that the children were dependent and awarding DHR legal and physical care and control of the children. The juvenile court authorized DHR to place the children in foster care. No evidence was presented regarding where or with whom the children lived after the juvenile court entered those judgments. All

5

the orders and judgments entered in the previous actions are contained in the supplemental record in this matter.

After the entry of the judgments finding the children dependent, the mother said, she continued to reside in Tennessee. She testified that she told the juvenile court that any drug testing and counseling that she needed would have to be done in Tennessee, where she lived. Newsom testified that the mother was offered services in Jackson County but that she was unsure whether the mother had enrolled in a family-wellness program in Alabama or whether she had been offered substance-abuse rehabilitation in Alabama. It is undisputed that the mother entered rehabilitation programs in Tennessee after the termination cases began. The mother testified that there had been no actions involving the children commenced in any state other than Alabama.

On March 28, 2025, the juvenile court entered orders regarding each child, finding that, at the time the children were found to be dependent, they had no home state entitled to exercise jurisdiction under § 30-3B-201, Ala. Code 1975, and that no court of another state had entered a previous custody determination involving the children. It determined that it had obtained jurisdiction over the children pursuant

to § 30-3B-204(a), Ala. Code 1975, which governs a juvenile court's temporary emergency jurisdiction. The juvenile court went on to explain that its

> "custody determination from the emergency request through the entry of the termination of parental rights order[s] was a final determination of custody and the State of Alabama became the home state of the [children] per [§] 30-3B-204(b), Ala. Code 1975. As such, this Court possessed subject-matter jurisdiction to enter the judgment[s] terminating the mother's parental rights."

## Analysis

Under Alabama law, "because a juvenile court is a statutory court of limited jurisdiction, see W.B.B. v. H.M.S., 141 So. 3d 1062, 1065 n.1 (Ala. Civ. App. 2013), we cannot assume its jurisdiction; instead, every fact essential to its jurisdiction must affirmatively appear of record." H.A.A. v. B.J.J., 368 So. 3d 876, 882 (Ala. Civ. App. 2022).

The parties do not dispute that the juvenile court had temporary emergency jurisdiction to make a custody determination pursuant to § 30-3B-204. Section 30-3B-204(b) provides:

> "If there is no previous child custody determination that is entitled to be enforced under [the UCCJEA] and a child custody proceeding has not been commenced in a court of a state having jurisdiction under [§§] 30-3B-201 through 30-3B-203, [Ala. Code 1975,] a child custody determination made under this section remains in effect until an order is obtained

7

from a court of a state having jurisdiction under [§§] 30-3B-201 through 30-3B-203. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under [§§] 30-3B-201 through 30-3B-203, <u>a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child</u>."

(Emphasis added.)

Recently, this court considered what is meant by the phrase "a child custody determination made under" § 30-3B-204(b) and concluded that it "refers only to an order that temporarily disposes of a child's custody in an emergency pursuant to a juvenile court's temporary emergency jurisdiction." <u>W.S. v. Houston Cnty. Dep't of Hum. Res.</u>, [Ms. CL-2023-0794, Mar. 21, 2025] ___ So. 3d ___, ___ (Ala. Civ. App. 2025) (opinion on return from remand). We held that "the legislature cannot have intended a <u>later</u> dependency judgment -- one that follows the temporary order and to which § 30-3B-204(b) does not refer -- to serve as the kind of order that can become a final custody determination under § 30-3B-204(b)." <u>Id.</u> at ___.

Additionally, we held in <u>W.S.</u> that, for an emergency order issued pursuant to § 30-3B-204(b) to become a "final determination," "the emergency order providing for that temporary disposition must provide,

8

explicitly, that it is intended to be a final custody determination." W.S., ___ So. 3d at ___. In these cases, there is no language in the temporary emergency orders providing that they are to be final custody determinations. Because this court has previously determined that § 30-3B-204(b) applies only to an emergency custody order and the emergency orders entered in these cases did not contain explicit language providing that they were final determinations of custody, to the extent that the juvenile court found that it had subject-matter jurisdiction to consider the termination of the mother's parental rights under § 30-3B-204(b), the juvenile court erred. See J.D. v. Lauderdale Cnty. Dep't of Hum. Res., 121 So. 3d 381, 385 (Ala. Civ. App. 2013) ("[A] juvenile court exercising temporary emergency jurisdiction under § 30-3B-204 does not have jurisdiction to adjudicate dependency and award custody by virtue of the limited jurisdiction provided to it."); B.B. v. L.W., 163 So. 3d 1042, 1050 (Ala. Civ. App. 2014) ("[T]emporary emergency jurisdiction did not authorize the trial court to make an award of permanent custody.").

However, generally, "'[a]n appellate court may affirm the judgment of the trial court when the trial court has reached the right result for the wrong reason.'" Payne v. City of Decatur, 141 So. 3d 500, 504 (Ala. Civ.

App. 2013) (quoting <u>Lloyd Noland Found., Inc. v. HealthSouth Corp.</u>, 979 So. 2d 784, 796 (Ala. 2007)).  Although the juvenile court did not have subject-matter jurisdiction under § 30-3B-204 to terminate the mother's parental rights, there are other potential grounds for the juvenile court's exercise of subject-matter jurisdiction under the UCCJEA in the termination-of-parental-rights actions.  First, the juvenile court might have had jurisdiction under § 30-3B-202, Ala. Code 1975, which provides in pertinent part and subject to certain exceptions not applicable here, that an Alabama court that has made a child-custody determination consistent with § 30-3B-201, which pertains to subject-matter jurisdiction to make an initial child-custody determination, has continuing, exclusive jurisdiction over that determination.  In other words, if the juvenile court had subject-matter jurisdiction under § 30-3B-201 when entering its dependency orders, it would have had continuing jurisdiction to consider the later termination-of-parental-rights actions.  Second, if the juvenile court did not have jurisdiction to consider the dependency petitions, it may have had jurisdiction to consider the termination-of-parental rights actions under § 30-3B-201 as initial child-custody proceedings.  We consider each possibility in turn.

In its judgments entered after remand, the juvenile court suggests that it had continuing subject-matter jurisdiction from "the emergency request through the entry of the termination of parental rights" judgments. However, as mentioned, a juvenile court's temporary emergency jurisdiction alone does not give that court jurisdiction to decide subsequent issues of dependency. See J.D., 121 So. 3d at 385.

Section 30-3B-201(a) provides that an Alabama court has jurisdiction to make an initial child-custody determination only if:

> "(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

> "(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under [§] 30-3B-207 or [§] 30-3B-208, [Ala. Code 1975,] and:

> > "a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

> > "b. Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

11

"(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or

"(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3)."

The UCCJEA defines "home state," the first of the four enumerated grounds for subject-matter jurisdiction, in relevant part, as "[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." § 30-3B-102(7), Ala. Code 1975. In the case of the youngest child, who was not yet six months old at the time the dependency actions were commenced, the definition provides that home state "means the state in which the child lived from birth" with a parent or a person acting as a parent. Id. Here, the mother's testimony at the hearing after remand indicates that, when DHR commenced the dependency actions on November 28, 2022, the 2 older children involved in these cases and the mother had been residents of Tennessee for at least the preceding 10 months and the youngest child would have been a resident of Tennessee since birth, meaning Tennessee would be the children's home state. However, Newsom's testimony at that hearing

12

indicates that the mother, who presumably had the children with her at that time, left the maternal grandmother's house in Georgia for the motel in Bridgeport. Newsom's testimony fits with the mother's previous testimony at the termination trial that she had "lived at" her mother's house in Georgia before obtaining the motel room in Alabama. No evidence was presented regarding how long the mother had resided with the maternal grandmother in Georgia. In other words, if she and the children had lived in Georgia for the six months preceding the filing of the dependency petitions -- or, in the case of the youngest child, if that child had lived in Georgia since birth -- then Georgia would be their home state. Thus, based on the record before us, it is possible that either Tennessee or Georgia was the children's home state when the dependency petitions were filed. What is clear from the record, however, is that there is no evidence that would support a finding that the children lived in Alabama "with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of" the dependency actions. Indeed, in its appellate brief, DHR concedes that, when the dependency actions were commenced, Alabama was not the

13

children's home state. Thus, there is no basis for finding that the juvenile court had home-state jurisdiction over the children at that time.

Because we conclude that, at the time of the commencement of the dependency actions, Alabama was not the children's home state and the record does not clearly show whether a court of another state could exercise home-state jurisdiction, we next consider whether Alabama has subject-matter jurisdiction under section (a)(2), which is known as significant-connection jurisdiction. That section would allow the juvenile court to exercise subject-matter jurisdiction over the dependency actions if, among other things, the children and the mother or another person acting as the children's parent had "a significant connection with this state other than mere physical presence." § 30-3B-201(a)(2). Here, the undisputed evidence indicates that, at the time of the commencement of the dependency actions, neither the mother, the children, nor a person acting as a parent to the children had a significant connection to Alabama other than, at most, their physical presence in Alabama. W.S., ___ So. 3d at ___; see also A.M. v. Houston Cnty. Dep't of Hum. Res., 262 So. 3d at 1217-18. In its brief, DHR acknowledges that "[t]he record does not reflect evidence of any other family ties, employment, school or daycare

14

enrollment, social activities, or medical care in Alabama." Thus, there is insufficient evidence in the record to indicate that the juvenile court had subject-matter jurisdiction over the dependency actions under §30-3B-201(a)(2).

An Alabama court can exercise subject-matter jurisdiction under § 30-3B-201(a)(3) when a court of another state with subject-matter jurisdiction over a child declines to exercise that jurisdiction because an Alabama court is the more appropriate forum to determine the child's custody. Here, the parties agree that there were no actions involving the children in any court of another state, and no court of another state had declined to exercise jurisdiction over the children. Thus, subsection (a)(3) is inapplicable.

The fourth and final jurisdictional basis of § 30-3B-201(a) is triggered when "[n]o court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3) [of this section]." § 30-3B-201(a)(4). As previously discussed, the record shows that it was possible that either Tennessee or Georgia was the children's home state at the commencement of the dependency actions, and, moreover, the record reflects that the children and the mother could have had a

significant connection with either or both of those states, given the evidence indicating that the mother and children had lived in Tennessee and/or Georgia for the requisite period preceding November 2022, when DHR filed the dependency petitions; that the mother had lived and worked in Tennessee from shortly after the dependency petitions were filed up to and including the time of trial; that the children's siblings and most of their extended family lived in Tennessee; that the maternal grandmother lived in Georgia; and that, according to the mother, the children had often visited the maternal grandmother there. The mother and Newsom testified that, before the commencement of these cases, the mother had had involvement with child protective services in both Tennessee and Georgia. The burden of demonstrating the existence of subject-matter jurisdiction falls on the party invoking jurisdiction. Bernals, Inc. v. Kessler-Graystone, LLC, 70 So. 3d 315, 321 (Ala. 2011); Crutcher v. Williams, 12 So. 3d 631, 635 (Ala. 2008). Here, DHR failed to demonstrate that subsection (a)(4) was triggered because it failed to show that neither Tennessee nor Georgia could have exercised jurisdiction under at least one of the jurisdictional bases provided in § 30-3B-201(a).

16

Having concluded that the record does not show that the juvenile court had subject-matter jurisdiction under § 30-3B-201 to enter the dependency judgments, those judgments were void, and the juvenile court did not retain continuing, exclusive jurisdiction under § 30-3B-202 to enter the termination judgments. We thus now consider whether, despite not having had jurisdiction to enter the dependency judgments, the juvenile court may have had jurisdiction to enter the termination judgments as an exercise not of continuing jurisdiction but of initial-custody-determination jurisdiction under § 30-3B-201.

As noted above, under subsection (a)(1), a trial court must consider whether, when the relevant proceedings are commenced, Alabama is the child's home state, which, according to the UCCJEA, is the state in which the child "lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." § 30-3B-102(7). Here, the termination-of-parental-rights actions were commenced on February 27, 2024, and there is no question that the children had been living in Alabama for more than six months preceding the commencement of those actions. However, the children did not, during that period, live in Alabama with a parent.

17

DHR contends that it was a "person acting as a parent" with whom the children had lived for 15 months preceding the commencement of the termination actions, and it correctly notes that the word "person" includes government agencies.[2]  See § 30-3B-102(12).  However, the full definition of the phrase "person acting as a parent" is:

"A person, other than a parent, who:

"a.    Has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and

"b.    Has been awarded legal custody by a court or claims a right to legal custody under the law of this state."

_____

[2]DHR's reliance on A.M. v. Houston County Department of Human Resources, 262 So. 3d 1210, 1219 n.1 (Ala. Civ. App. 2017), to support this contention is misplaced.  There, this court determined, without explanation, that even if it incorrectly had found that the juvenile court there had properly exercised jurisdiction over a dependency action, the home state of the child at issue had become Alabama by the time that a termination action was later commenced. That determination, appearing in a single footnote, followed an extensive analysis and conclusion in the text of the opinion demonstrating that the juvenile court did, in fact, have jurisdiction under the UCCJEA over the dependency action.  Thus, the court's footnote was dicta, and the court's failure to explicitly consider the various requirements of home-state jurisdiction renders the footnote of little aid in analyzing the questions at issue in this case.

§ 30-3B-102(13). The only reason the children remained in Alabama at the time DHR commenced the termination actions was because of the juvenile court's dependency orders purporting to award DHR legal and physical custody of the children, orders that we have already determined the juvenile court was without subject-matter jurisdiction to enter. We cannot, given the voidness of the orders purporting to award custody of the children to DHR, conclude that DHR met the definition of a person acting as a parent to the children. That is, we cannot conclude that DHR properly was exercising physical or legal custody of the children at the time it commenced the termination actions.[3]

We also conclude that subsection (a)(2), which describes when a trial court can exercise "significant-connection" jurisdiction, does not provide a basis for initial-custody-determination jurisdiction for purposes of the termination actions. As discussed, the children's connection with Alabama is based on their physical presence, the vast majority of which

---

[3]For the same reason, any foster parents with whom the children had been placed pursuant to the juvenile court's dependency orders would not qualify as persons acting as parents. Moreover, Alabama law is clear that a foster parent does "not qualify as a person acting as a parent while keeping children in foster care." Ex parte R.B., 409 So. 3d 620, 628-29 (Ala. Civ. App. 2024).

presence appears to rest on the void dependency orders. The mother does not appear to have a significant connection with Alabama. And, as discussed above, we are not aware of any persons acting as parents to the children at the time the termination actions were commenced, let alone any such individuals that would have a significant connection with Alabama.

For the same reason that subsection (a)(3) does not provide a basis for the juvenile court's exercise of jurisdiction at the time the dependency actions were commenced, it does not provide a basis for jurisdiction when the termination actions were commenced. Specifically, nothing in the record indicates that a court of another state with subject-matter jurisdiction over the custody of the children had declined to exercise that jurisdiction on the basis that an Alabama court is the more appropriate forum to determine the children's custody.

Finally, we cannot conclude that the jurisdictional basis set forth in subsection (a)(4), which allows for an Alabama court to exercise subject-matter jurisdiction over a child's custody when no court of any other state would have subject-matter jurisdiction under the first three subsections, was triggered by DHR's commencement of the termination actions.

Although, arguably, neither Tennessee nor Georgia were the children's home state by the time of the commencement of the termination actions, as noted above, the record reflects significant contacts between the mother and the children and those states, while it reflects that the children's only connection with Alabama appears to be their mere physical presence and that the mother did not appear to have significant connections with Alabama. As a result, we cannot say, based on the record, that neither Tennessee nor Georgia had subject-matter jurisdiction over the children's custody under subsection (a)(2) at the time DHR filed its termination petitions, and we therefore cannot conclude that subsection (a)(4) vested the juvenile court with jurisdiction to entertain those actions.

## Conclusion

For the reasons discussed, we hold that DHR failed to establish that the juvenile court had subject-matter jurisdiction to consider the petitions to terminate the mother's parental rights to the children. A judgment entered by a juvenile court that lacks subject-matter jurisdiction is void. See G.W.K. v. B.W.M., 387 So. 3d 1126, 1135 (Ala. Civ. App. 2023). Because a void judgment will not support an appeal,

CL-2024-0504, CL-2024-0505, and CL-2024-0506

these appeals are dismissed with instructions to the juvenile court to vacate the judgments terminating the mother's parental rights.  Id.

CL-2024-0504 -- APPEAL DISMISSED WITH INSTRUCTIONS.

CL-2024-0505 -- APPEAL DISMISSED WITH INSTRUCTIONS.

CL-2024-0506 -- APPEAL DISMISSED WITH INSTRUCTIONS.

Edwards, Hanson, Fridy, and Bowden, JJ., concur.

Moore, P.J., dissents, with opinion.

CL-2024-0504, CL-2024-0505, and CL-2024-0506

MOORE, Presiding Judge, dissenting.

I respectfully dissent.

As the main opinion acknowledges, the Jackson Juvenile Court ("the juvenile court") originally obtained temporary emergency jurisdiction to enter protective orders regarding L.L.B., J.L.B., and C.J.B. ("the children") pursuant to Ala. Code 1975, § 30-3B-204(a), which is part of the Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), Ala. Code 1975, § 30-3B-101 et seq., and which provides:

> "A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse."

The record shows that the juvenile court exercised its temporary emergency jurisdiction by entering shelter-care orders on December 2, 2022, removing the children from the custody of C.R.B. ("the mother") and placing them temporarily in the custody of the Jackson County Department of Human Resources ("DHR"). Those shelter-care orders were "child custody determination[s]" within the meaning of the UCCJEA. See Ala. Code 1975, § 30-3B-102(3) (defining "child custody determination").

23

The record further reveals that the children had not been the subject of any previous child-custody determination and that no child-custody proceeding had been commenced regarding the children in any other state. Section 30-3B-204(b), Ala. Code 1975, provides:

> "If there is no previous child custody determination that is entitled to be enforced under [the UCCJEA] and a child custody proceeding has not been commenced in a court of a state having jurisdiction under [Ala. Code 1975, §§] 30-3B-201 through 30-3B-203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under [§§] 30-3B-201 through 30-3B-203. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under [§§] 30-3B-201 through 30-3B-203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child."

By its plain language, § 30-3B-204(b) allows an Alabama juvenile court with temporary emergency jurisdiction over a child who is not the subject of other child-custody proceedings to make its child-custody determination a final determination "if it so provides and this state becomes the home state of the child."

As I explained in my special writing in W.S. v. Houston County Department of Human Resources, [Ms. CL-2023-0794, Mar. 21, 2025] ___ So. 3d ___, ___ (Ala. Civ. App. 2025) (opinion on return from remand)

24

(Moore, P.J., concurring in the result), I believe a juvenile court substantially complies with § 30-3B-204(b) when, upon a determination that no other child-custody proceeding has been commenced involving a child over which it has temporary emergency jurisdiction, it enters a judgment adjudicating the child to be dependent, thereby impliedly making its child-custody determination "final." I did not agree with the main opinion in W.S. that, in order to comply with § 30-3B-204(b), a juvenile court must explicitly state that its shelter-care or other temporary protective order will become a final judgment. I maintain my opinion on that point. In this case, the juvenile court adjudicated the children to be dependent children on January 26, 2023, in three separate judgments, clearly intending that its child-custody determinations would be final judgments within the meaning of § 30-3B-204(b).

At the time the juvenile court entered its dependency judgments, the children had not been residing in Alabama for six consecutive months with a parent or a person acting as a parent, so Alabama was not their home state. See Ala. Code 1975, § 30-3B-102(7) (defining "home state"). In the dependency judgments, the juvenile court awarded DHR legal custody of the children and directed DHR to place the children in foster

care.  Although there is no direct evidence regarding the placement of the children, the evidence implies that the children were placed in licensed foster-care homes, where they have remained since at least 2023.  Under those circumstances, DHR became a "person acting as a parent" toward the children, see § 30-3B-102(13), and Alabama became their home state by mid 2023 at the latest.  Pursuant to § 30-3B-204(b), once Alabama became the home state of the children, the dependency judgments became final child-custody determinations.

When an Alabama juvenile court has made a final child-custody determination consistent with the UCCJEA, the juvenile court retains

"continuing, exclusive jurisdiction over the determination until:

"(1) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

"(2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state."

26

Ala. Code 1975, § 30-3B-202. Because the children remained in Alabama in the legal custody of DHR and the physical custody of their foster parents when DHR filed its petitions to terminate the parental rights of the mother on February 27, 2024, the juvenile court had continuing exclusive jurisdiction over those petitions, each of which commenced a new "child custody proceeding." See § 30-3B-102(4). In my opinion, the juvenile court properly acted pursuant to its continuing exclusive jurisdiction, and it entered valid judgments in each case terminating the mother's parental rights.